Argued December 2, reversed and remanded December 28, 1926.

## D. C. MINTO *v.* SALEM WATER, LIGHT & POWER CO.

(250 Pac. 722.)

**Evidence — Parol Evidence Held Inadmissible to Show Intent of Grantors of Easement.**

1. Parol evidence, offered to show what the grantors of an easement to a water company intended to convey, *held* properly excluded, where instrument was clear and unambiguous.

**Easements—Extent of Easement Depends on Proper Construction of Grant, Without Consideration of Extraneous Circumstances, Where Language is Unambiguous.**

2. The determination of the extent and nature of an easement depends on proper construction of language of instrument, without consideration of extraneous circumstances, where language is unambiguous.

**Deeds—Rules of Construction cannot be Invoked to Contradict Plain Language.**

3: Rules of construction are not to be invoked to contradict the plain meaning and purport of language of a grant.

**Easements—Express Grant of Easement Conveys All Rights Incidental or Necessary to Its Full Enjoyment.**

4. An easement created by express grant gives to grantee all rights which are incidental or necessary to its full enjoyment, but does not convey rights not incidental to easement itself.

**Easements—Rights Under Implied Covenant cannot Conflict With Express Grant.**

5. Rights claimed under an implied covenant must not conflict with expressed terms of the grant.

---

3. See 9 R. C. L. 784.
4. See 9 R. C. L. 785.

Easements—Clear Language of Grant is Decisive of Limits of Easement.

6. Where language of express grant of easement is clear and unambiguous, it is decisive of the limits of the easement.

Waters and Watercourses—Deed of Easement to Water Company Held not Construable as Implied Grant of Right to Make Surface Improvements.

7. Where grant of easement to water company conveyed right to lay pipes, construct wells, cisterns and filter cribs, but required them to be far enough below the surface so that they would not interfere with cultivation of the soil or with transportation over the land, *held* deed was not construable as an implied grant of right to make surface improvements, nor were the restrictions limitable to land then susceptible of cultivation.

Waters and Watercourses—Easement by Prescription Held not Acquired by Water Company.

8. Water company, grantee of easement in land, *held* not to have acquired additional easement by prescription or adverse possession.

Easements—Open, Continuous, Exclusive Possession Under Claim of Right for Statutory Period is Essential to Easement by "Prescription."

9. To create an easement by "prescription," it is essential that the use must have been open, continuous, exclusive, and under the claim of right for statutory period.

Easements—Permissive Use can Never Ripen into Prescriptive Easement.

10. A prescriptive easement can never ripen out of mere permissive use, no matter how long exercised.

Waters and Watercourses—Water Company Held to have Burden of Proof of Prescriptive Easement.

11. Water company, shown to have made an unwarranted use of land in excess of its rights under easement, has burden of establishing, by a preponderance of the evidence, its alleged prescriptive right or estoppel of adverse party.

Adverse Possession—Offer to Purchase Negatives Adverse Possession, and, After Prescriptive Period, Tends to Show Enjoyment was not Adverse.

12. An offer to purchase negatives the idea of adverse possession, and, even when made after prescriptive period tends to show that enjoyment was not adverse.

Waters and Watercourses—Water Company's Condemnation Proceedings Held to Refute Claim of Prescriptive Right.

13. That water company, claiming prescriptive easement after expiration of prescriptive period, instituted condemnation proceed-

11. See 9 R. C. L. 781.
12. See 9 R. C. L. 782.

ings to appropriate rights in question, *held* to strongly refute the claim that it had then acquired prescriptive right.

**Estoppel—Land Owner Held not Estopped to Deny That Water Company had Prescriptive Easement in Land.**

14. Owner of land, in which water company was asserting prescriptive easement, *held* not estopped to deny such rights, in view of protests and objections showing that water company had not been misled into making improvements.

**Estoppel — Mere Silence or Passive Acquiescence Does not Estop Denial of Prescriptive Rights—"Estoppel."**

15. Mere silence or passive acquiescence will not of itself constitute "estoppel" to deny alleged prescriptive rights.

**Waters and Watercourses—Land Owner Held Entitled to Injunction Against Water Company's Exercise of Easement in Excess of Grant (Const., Art. I, § 18).**

16. Land owner *held* entitled, under Constitution, Article I, Section 18, to injunction restraining water company from exercising easement rights in excess of those expressly granted, provided a reasonable time was allowed for company to condemn the rights involved or change its plan to comply with rights granted.

**Injunction—Land Owner is not Entitled to Injunction Against Water Company's Use of Land if Irreparable Injury to Public will Result.**

17. Water company's breach of plaintiff's legal rights by unauthorized use of land does not, as a matter of right, entitle plaintiff to extraordinary remedy of injunction, if such relief would result in great and irreparable injury to public.

**Injunction—Land Owner Held Without Adequate Remedy at Law, as Affecting Right to Injunction Against Continuing Trespass of Water Company.**

18. Land owner *held* without adequate remedy at law as affecting right to injunction against continuing trespass by water company asserting prescriptive easement in land, particularly since damages were uncertain and difficult of proof.

**Injunction—Damages for Water Company's Trespass on Land Held not so Trivial as to Preclude Equitable Relief.**

19. Damages for water company's trespass on land, unfit for cultivation, *held* not so trivial as to preclude relief in equity, in view of rental value of sand and gravel rights in such land.

---

Adverse Possession, 2 C. J., p. 102, n. 25, 26.

Contracts, 13 C. J., p. 525, n. 34.

Easements, 19 C. J., p. 878, n. 38, p. 879, n. 53, 54, p. 881, n. 76, p. 885, n. 56, p. 886, n. 64, p. 888, n. 79, p. 891, n. 9, 21, p. 893, n. 46, p. 897, n. 99, p. 908, n. 45, 47, 48, p. 958, n. 39, 40, p. 961, n. 78, p. 964, n. 34, p. 967, n. 80, p. 968, n. 94, 94 New.

Estoppel, 21 C. J., p. 1150, n. 90.

Evidence, 22 C. J., p. 1177, n. 49.

Injunctions, 32 C. J., p. 81, n. 27, p. 82, n. 29, 44.

From Marion: Percy R. Kelly, Judge.

Department 1.

This is a suit to enjoin a continuing trespass. The defendant company is a corporation engaged in the business of supplying water to the City of Salem and its inhabitants. It is the successor in interest of the Salem Water Company, a corporation which likewise operated for many years. Deeming the water supply inadequate for a rapidly growing city, the Salem Water Company in 1897 secured from John Minto and wife, plaintiff's parents and predecessors in interest, an easement which, so far as material, is as follows:

"Witnesseth: * * the full, free and exclusive right of way to lay down, use and repair, pipes for conveying water, and to construct, use, maintain and repair, wells, cisterns and filtering-cribs in and upon the following described lands and premises to-wit: (Description) * * containing 12.67 acres of land more or less, * * and also upon and across all lands formed by the accretions of the Willamette River North of the meander line of the Government survey on the South side of the said Willamette River in (Description), a plat of said lands being for greater certainty of description hereto annexed and made a part of this grant of right-of-way.

"This grant of right-of-way is made upon the consideration that the said party of the second part (Salem Water Company) shall furnish the said parties of the first part (Minto et ux.), water free of charge for the use of their residence through a one and one-half-inch pipe, said pipe to be furnished by said parties of the first part and to be connected with the said Salem Water Company's mains wherever the said parties of the first part shall designate, and that the said party of the second part shall place all pipes, wells, cisterns, and filtering-cribs which may here-

after be laid, or constructed in or upon said land, far enough below the surface so that they will in no way interfere with the cultivation of the soil or with transportation over said land, or damage the said parties of the first part, either in transportation over or in cultivation of the same.''

The 12.67 acre tract, designated on the plat referred to in the above instrument as a ''gravel bar,'' is an island separated from the larger tract and mainland by a narrow channel of shallow water over which at one time was constructed a bridge. The other land included in the grant was described by general reference and is designated in the record as the 50-acre tract. It is far more adapted to cultivation and has a greater elevation than the smaller tract. Since this easement was granted the island has, by accretions from the Willamette River, doubled in size. For several months during the year the island is entirely submerged. It is covered to a large extent by scrubby willows and brush. It seems that both tracts, by reason of their close proximity to the City of Salem, are valuable chiefly on account of sand and gravel rentals.

After having acquired the easement, the Salem Water Company, in 1898, in order to obtain a more adequate supply of better water, constructed on the island a filtering crib about ten feet below the surface of the ground. When the water from the Willamette River was at a comparatively high stage it covered this land and readily filtered through the gravel and sand into the crib, but when the river, during the summer months, receded, ditches were dug to run the water into a pond over the crib. The pond covered almost three acres of land. From this filtering-crib the water was drawn by suction pipes to the com-

pany's station at Salem where it was chemically
treated before being used by consumers. This
process was followed until 1907 when it was deemed
advisable and necessary by the company, on account
of increased consumption, to install a pump and
electric motor on the extreme western side of the
island, whereby the water was pumped into the pond.
For protection to the pump and motor a small shed
was erected over them. At this time an additional
crib was also constructed. This latter system of
obtaining water has been followed to the present
time.

In 1911 the Salem Water Company sold and as-
signed to the defendant company all its ''rights,
privileges and easements'' in and to that ''certain
gravel bar in the Willamette River above said city
of Salem, commonly known as the Minto Gravel Bar;
* * subject, however, to all the requirements, restric-
tions and conditions'' set forth in the instrument
around which this controversy centers. Contention
arose as to the right of the defendant so to use the
land under the terms of its grant, and, being unable
to agree upon the terms of purchase, condemnation
proceedings were instituted in 1920 to acquire the
entire island. The cause was put at issue and a ver-
dict was returned fixing the value of the land at
$18,000. Defendant did not, under the statute, elect
to take the property and, upon motion of defendant,
the proceedings were dismissed.

Plaintiff complains that the use to which his prop-
erty is being subjected by defendant is in excess
of the rights of the latter under the terms of the
deed of easement and constitutes a continual trespass
to his irreparable damage and injury. Plaintiff
urges that no right exists to use the property in

question for surface filtration and that all pipes,
cisterns, cribs and other structures must be below the
surface of the ground so as not to interfere with
the cultivation or use of the land for transportation
purposes. Plaintiff also alleges, in substance, that
on account of the wrongful acts of defendant in
carrying on its present operations, "no shrubbery,
trees, or vegetation is permitted to grow," and that
if the surface of the land were not disturbed it would
build up by accretion and would eventually be suit-
able for cultivation. It is also alleged that plaintiff
is "prevented from establishing means of transpor-
tation over the surface of said bar for the purpose
of removing gravel therefrom and * * from leasing
said lands for gravel excavation." Defendant con-
tends that, in the light of the situation of the parties
and all of the facts and circumstances attending the
execution of this instrument, it was the intention of
the grantor that the restrictions therein specified
should apply only to the 50-acre tract and not to the
island, since the latter "was not then and apparently
never would be susceptible of either transportation
or cultivation"; that it was the intention of plaintiff's
predecessors in interest to convey to the Salem Water
Company and its successors in interest, the right so
to construct its system on the island as to enable it
forever to furnish its patrons with pure and whole-
some water and that it will not be possible for it so
to do unless permitted to carry on its present opera-
tions. It is alleged that, notwithstanding the fact
that the land upon which defendant has for many
years maintained its pond or filtration bed has no
"existing value to plaintiff * * he is threatening to
remove gravel from said portion of said island, and
to contaminate the water by running livestock

thereon, and if permitted so to do, said acts and conduct will destroy said portion of said island for said purposes, to the great and irreparable injury of defendant.'' As a further and separate defense it is averred in substance that defendant, for more than twenty years last past, has, under claim of right, openly, adversely, exclusively and continuously occupied and used the tract of land in question in the manner above mentioned and, by reason thereof, has acquired a legal right so to do. Finally, it is contended that plaintiff ought to be estopped from asserting that defendant or its predecessor in interest has exceeded its rights in the use of the premises for the reason that valuable and extensive improvements have been made upon the property in controversy, with the acquiescence and approval of John Minto from whom plaintiff acquired title.

The trial court held against the defendant in its construction of the contract. It found that the doctrine of estoppel was not involved; that the water company had not acquired any additional rights by adverse use and that it had exceeded its right in the use of the premises under the present system of operation; but refused to grant equitable relief by injunction for the reason that no ''present substantial damage has been established * * by reason of the trespass committed by defendant upon said premises,'' and also on account of the injury that might be sustained to the inhabitants of the City of Salem if the defendant company were restrained from procuring water as it now does. From a decree dismissing the suit and awarding plaintiff's costs and disbursements, both parties appeal.

REVERSED AND REMANDED.

120 Or.—14 ·

For plaintiff-appellant there was a brief over the name of *Messrs. Smith & Shields,* with an oral argument by *Mr. Roy F. Shields.*

For defendant-appellant Salem Water, Light & Power Co. there was a brief over the names of *Messrs. Harris, Smith & Bryson* and *Messrs. McNary, McNary & Keyes,* with oral arguments by *Mr. Lawrence T. Harris* and *Mr. John H. McNary.*

BELT, J.—1, 2. The trial court properly sustained objection to parol evidence offered to show what the grantors of the easement intended to convey. The language of this instrument is clear and unambiguous. It clearly and definitely defines the rights of the water company in its use of the premises, and so must it be bound unless, subsequent to the execution thereof, additional rights have been acquired or plaintiff has become estopped from asserting his rights. The determination of the extent and nature of an easement by deed depends upon proper construction of the language of the instrument, without consideration of extraneous circumstances, where the language is unambiguous: *Ruhnke* v. *Aubert,* 58 Or. 6 (113 Pac. 38); 19 C. J. 908, and numerous cases therein cited. As stated in 22 C. J. 1177:

"Where the language used is clear and unambiguous, extrinsic evidence is not admissible on the ground of aiding the construction, for in such case the only thing which could be accomplished would be to show the meaning of the writing to be other than what its terms express, * * ."

3. It is the duty of the court to declare the meaning of what is written in the instrument, not of what was intended to be written. Defendant is not seeking a

reformation of the conveyance on the ground of mutual mistake. Rules of construction are not to be invoked to contradict the plain meaning and purport of the language used.

It is urged that the primary object of the grantor was to enable the Salem Water Company to procure pure and wholesome water and there is an implied covenant that it or its successor in interest has the right to do those things reasonably necessary to accomplish such object. We do not think that Minto, either expressly or impliedly, so contracted. For the nominal consideration of supplying water to his residence, he conveyed a right of way or easement appurtenant to his land for the purpose of enabling the grantee, as a public utility corporation, to procure water for human consumption, but specifically restricted the exercise of such right by requiring that all pipes, cisterns, cribs and other structures be constructed below the surface of the ground, so as not to interfere with his use of the land. If defendant's construction of this contract is correct, it might, if necessary in order to furnish pure and ample water to the inhabitants of Salem, erect a large filtration plant, or some other large structure upon the land, and thereby substantially deprive plaintiff of all use of his property. Plaintiff's use of the land is controlled largely by the determination of whether the water company has a right to continue surface filtration. If the company has the right so to maintain a pond or filtering bed, it follows that plaintiff must adapt his use of the land as not to interfere with such right. Plaintiff would not, if defendant's construction of the easement be correct, be permitted to remove gravel so as to interfere with the impounding of water in the filtering bed, nor would it be

consistent with the grant to allow stock to run at large and thereby contaminate the water. If, however, the defendant has only the right of subsurface filtration and is obliged, under its grant, to place "all pipes, wells, cisterns and filtering cribs * * far enough below the surface so that they will not interfere with cultivation of the soil or with transportation over said land,'' then plaintiff's use of the land would be far less restrictive. The relative rights and obligations of persons having easements to land and those who are owners of the servient estate are well considered in *Kesterson* v. *California-Oregon Power Co.,* 114 Or. 22 (221 Pac. 826, 228 Pac. 1092), and *Hotchkiss* v. *Young,* 42 Or. 446 (71 Pac. 324). As stated in 9 R. C. L. 784:

·''The right of the easement owner, and the right of the land owner, are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both.''

4–7. While it is an established principle that an easement created by express grant gives to the grantee all rights which are incident or necessary to its full enjoyment, yet, under this rule, such only pass as are incident to the easement itself. It cannot operate to create a separate easement: 9 R. C. L. 785; 19 C. J. 968. Rights claimed under an implied covenant must not conflict with the express terms of the grant. Where the language of the deed is clear and unambiguous, as in the instant case, such is decisive of the limits of the easement: *Fendall* v. *Miller,* 99 Or. 610 (196 Pac. 381). In the light of the specific restrictions that defendant's operations be below the surface of the ground, we cannot, under the guise of construing the instrument, change the plain import

of its language so as to create the right to carry on operations above the surface of the ground. Nor do we think that the restrictions in the easement pertain only to the 50-acre tract. The deed does not so read. It is to be observed that the smaller tract was specifically described therein and the larger only by general reference, thus indicating that the grantor had the "gravel bar" or island particularly in mind concerning the matter of restrictions. The defendant's predecessor in interest, the Salem Water Company, recognized that the restriction applied to the island, as evidenced by a conveyance whereby its rights in the "Minto Gravel Bar" were transferred to the defendant in 1911; "subject, however, to all the requirements, restrictions and conditions set forth in said instrument." It is to be remembered that the plat attached to the deed of conveyance in 1897 designated the island as "Gravel Bar 12.67 acres." We think the intention relative to restrictions is clearly established, not only from the language of the instrument, but from the construction given to the instrument by the parties themselves.

*Patterson* v. *Chambers Power Co.*, 81 Or. 328 (159 Pac. 568), is typical of the cases relied upon by defendant as contrary to our conclusions relative to the rights of the parties under this easement. In the case mentioned, suit was instituted by certain property owners to enjoin the defendant company from widening a mill-race which flowed through attractive residential property in the City of Eugene. The power company asserted the right to widen the mill-race in order to conduct a sufficient amount of water from the Willamette River for the operation of certain industrial plants, and maintained the right so to widen the race in the future as its needs required.

The decision of that case, like many others cited, hinged upon the particular terms of the express grant. The defendant company was there given the right by deed "to bring all the water that may be required to run the mills—and all other mills or machinery that may at any time or times be placed upon the above-described premises of whatever kind or nature; also the right to dig the present raceway as wide and deep as may be necessary, * * ." In the Patterson case it is to be observed that the deed expressly granted the right which the defendant company there claimed, whereas the easement involved in this proceeding expressly prohibits the exercise of the rights which the water company here asserts. Distinction between that case and the one at bar is very apparent in view of the difference between the terms of the respective grants. There, the easement was, indeed, general in its terms, but here it specifically limits and defines the rights which may be exercised. Each case must be considered in the light of the particular terms of the easement granted, and when so viewed, in our opinion, none cited or which we have been able to find controls the decision in this case.

8–10. Having reached the conclusion that defendant's use of the land is not warranted under the express or implied terms of its grant, we proceed to the inquiry: Has defendant acquired an additional easement by prescription or adverse possession which would give it the right so to operate? To create an easement by prescription it is essential that the use must have been open, continuous, exclusive, and under claim of right for statutory period. Substantially the same elements must exist as where title to real property is acquired by adverse possession: *City*

of *Clatskanie* v. *McDonald*, 85 Or. 670 (167 Pac. 560);
*Peters* v. *Robertson*, 73 Or. 263 (144 Pac. 568); *Parrott* v. *Stewart*, 65 Or. 254 (132 Pac. 523); *Hume* v.
*Rogue River Packing Co.*, 51 Or. 237 (83 Pac. 391, 92
Pac. 1065, 96 Pac. 865, 131 Am. St. Rep. 732, 31
L. R. A. (N. S.) 396). A prescriptive easement can
never ripen out of mere permissive use no matter how
long exercised: 19 C. J. 897. Defendant's prescriptive rights, if any exist, must be based upon the use of
the property in excess of that authorized by deed,
under claim of right, and adverse to the owner of the
servient estate. Did defendant or its predecessors in
interest, regardless of the express terms of the grant,
so maintain and claim the right, as against the world,
to erect structures, lay pipes, and otherwise use the
surface of the land in question? Or was it used with
the acquiescence and permission of plaintiff or his
predecessors in interest without the assertion of any
claim of right on the part of the water company so to
do?

11. Plaintiff, having established an excessive and
unwarranted use, as measured by the deed of easement granted, it becomes incumbent on defendant, in
order to justify its acts, to establish by a preponderance of the evidence, its alleged prescriptive rights
(9 R. C. L. 781) or that plaintiff is estopped from
asserting its present use is wrongful.

12, 13. It is the contention of defendant that no
objections whatever were made to the exercise of the
rights now asserted and enjoyed on the island, until
1915, when plaintiff and his brother, Harry P. Minto,
began making complaint. We are not so much concerned about the mere silence or acquiescence of the
plaintiff and those from whom he acquired interest,
as we are with the questions: Did defendant and
its predecessor in interest continually keep the "flag

of conquest unfurled and flying'' for the prescriptive period of time? Was the use made of the land under claim of right? Was it adverse in character? It will not do to lull the owner of the land into a false sense of security by long continued negotiations or by offers to purchase additional rights. The use must be hostile and under a *bona fide* claim of right. An offer to purchase negatives the idea of adverse possession (9 R. C. L. 782), and, even when made after prescriptive period, it tends to show that the enjoyment was not adverse: *Crosier* v. *Brown,* 66 W. Va. 273 (66 S. E. 326, 25 L. R. A. (N. S.) 174). It is true if an easement by prescription had been acquired the mere fact that, subsequent to the prescriptive period, an offer to purchase had been made, such would not, of itself, divest defendant of title or amount to an abandonment of easement, but, nevertheless, would be strong evidence that no prescriptive rights were actually acquired. The fact that defendant in 1920 instituted condemnation proceedings to appropriate the land in question strongly refutes the claim that it had then acquired title by prescription. If defendant, in truth, had acquired the prescriptive rights claimed by it, it was a vain and idle thing to have instituted condemnation proceedings. By so doing it recognized plaintiff's superior title. In *American Bank Note Co.* v. *New York El. R. R. Co. et al.,* 129 N. Y. 252 (29 N. E. 302), the defendant company claimed title by adverse possession, but after the expiration of the statutory period, instituted an action to condemn certain rights which plaintiff had in a street. The court, in commenting about the admissibility of the record of such proceedings, said:

"This proceeding was necessarily a solemn and formal admission of record of title in plaintiff to the

incorporeal rights in question. It is to be granted that such an admission made after the prescriptive right had been acquired, would not serve to destroy it. But the admission is evidence, reflecting back on what has occurred and tending to show what the real character of the possession claimed to be adverse in truth was. (*Perrin* v. *Garfield,* 37 Vt. 304). The company knew what its own possession and that of its predecessor had actually been, and it is hardly conceivable that, if such possession had been adverse either in fact or in intention, an admission would be formally made of ownership in the easements outstanding in the abutter.''

As stated in 2 C. J. 102:

''A recognition of the title of the true owner after the bar of the statute has run, so as to complete the title of the adverse claimant, will not alone defeat the title so acquired, but such recognition is evidence to be considered in determining whether in fact the prior possession of the adverse claimant was in fact adverse or a possession in subordination to the title of the true owner.''

The restrictions in the deed of the Salem Water Company to defendant are also worthy of consideration relative to this phase of the case. Was this not a recognition of the limitations of its easement?

14, 15. Defendant invokes the doctrine of estoppel. It says that plaintiff and his predecessors, for many years without objection, have allowed extensive and valuable improvements to be made on the island, and ought not now be heard to complain. There is no evidence that the plaintiff or his predecessors ever encouraged the water company to do what it has done. Protests and objections have been silenced with the promise to purchase or condemn the property. Mere silence or passive acquiescence will not, of itself, constitute estoppel. *Fraser* v. *Portland,* 81 Or. 92 (158

Pac. 514, 9 A. L. R. 614) ; *Stephens* v. *City of Eugene*, 90 Or. 167 (175 Pac. 855). The following letter, written by the vice-president of defendant company, does much to refute this contention:

"May 27, 1916.

"Mr. D. C. Minto,

"Salem, Oregon.

"Dear Sir:

"Relative to your claim that the Salem Water, Light & Power Company has exceeded its right by the present development work done on Minto's Gravel Bar near the City of Salem, will say it was my understanding in our recent conversation that the matter of determining whether we were exceeding our rights in said matter was to be deferred until the return of Mr. Park, and it was not my understanding that we were to cease work in the meantime.

"As soon as Mr. Park returns we will take the matter up with you and try to come to some satisfactory understanding about it and no advantage will be taken of the fact that we did work on the Gravel Bar after my talk with you.

"Nothing in our conversation in our office, or over the phone or in this letter is to be construed as prejudicial to the interests of any of the parties.

"Hoping that all misunderstandings may be satisfactorily adjusted, I remain,

"Very truly yours,

"Paul B. Wallace."

We concur with the learned trial judge that defendant has exceeded its rights under the easement granted and that no prescriptive rights have been acquired. Defendant was not misled. Estoppel is not involved.

16–18. We turn then to the question: To what equitable relief, if any, is plaintiff entitled? As a matter of simple justice, so far as the water company is concerned, it ought to do one of three things:

(1) Abide by its contract; (2) Compensate plaintiff for rights taken in excess of those granted, or (3) Abandon the easement and vacate the premises. It does not follow, however, as a matter of right, because there has been a breach of plaintiff's legal rights, that he is entitled to the extraordinary remedy of injunction. Even though there has been a continuing trespass and a multiplicity of actions would result if the plaintiff were obliged to seek redress at law, equity will not raise its restraining arm if, by so doing, great and irreparable injury might result to the public: *Booth-Kelly Lumber Co.* v. *Eugene,* 67 Or. 381 (136 Pac. 29); *Cubbins* v. *Mississippi River Com.,* 204 Fed. 299; *York Haven Water & Power Co.* v. *York Haven Paper Co.,* 201 Fed. 270; 32 C. J. 81, and cases in note, 14 Am. & Eng. Ann. Cas. 20. The defendant company is under contractual obligations to supply the inhabitants of the City of Salem with water. Having in mind the consequences that would result by summarily cutting off the water supply of a city, we proceed with caution that there be no unreasonable interference with such public service. Plaintiff does not seek to enjoin defendant from supplying good and wholesome water as in *Frost* v. *City of Los Angeles,* 181 Cal. 22 (183 Pac. 342, 6 A. L. R. 468), but only insists that the company be compelled, in rendering its service, to abide by the terms of its easement. We are not convinced that the present filtration system used by the defendant is the only way in which an adequate amount of pure water can be supplied. As a matter of economy and convenience it may excel any other plan, but such reasons do not warrant the taking of private property without compensation nor should they cause a court of equity to refuse the equitable relief sought. Plain-

tiff's property rights are sacred. The constitutional guarantee that "Private property shall not be taken for public use * * without just compensation first assessed and tendered" (Art. I, § 18, Constitution of Oregon) ought to mean something. Plaintiff has no adequate remedy at law to obtain redress for a continuing wrong—especially where the damages sustained are uncertain and difficult of proof. Equity, with its broad and flexible rules, ought to grant relief if no serious inconvenience and damage to the public would thereby result. In 32 C. J. 82, it is stated:

"If * * the alleged necessity for protecting the public interest and convenience is nothing more than a pretense and a cloak for the unlawful appropriation of private property to suit defendant's convenience, no reason exists why an injunction should not be granted, to restrain such unlawful acts."

In cases involving public convenience there is no hard and fixed rule for determining whether an injunction should be granted or refused. Each case necessarily depends upon its own particular facts and circumstances. The question of public interests as a determining factor in proceedings of this character is well considered in *Mobile O. R. Co.* v. *Zimmern,* 206 Ala. 37 (89 South. 475, 16 A. L. R. 1352), citing Pomeroy Eq. Jur. (4 ed.), § 1922. In *Booth-Kelly Lumber Co.* v. *Eugene, supra,* no direct trespass on property was involved, and this court, in view of all the facts and circumstances, refused to issue an injunction. However, in *Fraser* v. *Portland, supra,* and in *Stephens* v. *Eugene, supra,* injunction was granted notwithstanding the convenience of the public was directly involved. In *Schwarzenbach* v. *Oneonta Light & Power Co.,* 144 App. Div. 884 (129 N. Y. Supp. 384), the defendant was engaged in supplying

electricity to the inhabitants of a certain municipality and injunction was suspended as long as the company was thus engaged, but on appeal, 207 N. Y. 671 (100 N. E. 1134) the decree was modified to suspend the operation of the injunction until a date certain, thereby giving the defendant a reasonable time in which so to change its operations as not to trespass on the rights of the plaintiff. Also, see *Sammons* v. *City of Gloversville,* 175 N. Y. 346 (67 N. E. 622), wherein the city was restrained from committing a continual trespass by polluting a stream, but operation of decree was suspended until necessary rights could be acquired by purchase or condemnation. In *Grey* v. *Paterson,* 60 N. J. Eq. 385 (45 Atl. 995, 83 Am. St. Rep. 642, 48 L. R. A. 717), certain riparian owners were denied the right to enjoin a city from emptying sewage into a stream which flowed by their property, but the court, in so doing, used the following language:

"If these complainants amend their bill, or file a new bill asking for an injunction, unless the city will consent to make such compensation for the diminution in the value of their lands as shall be ascertained to be just, such equitable relief can be given to them."

19. We are unable to agree with the contention that the damages sustained by plaintiff are so trivial that equity ought not to act. It is true that the land in question at this time has no value for cultivation purposes, but the record discloses that it was leased from 1904 to 1916 and again in 1919, for its sand and gravel rights, for which rentals of $1,000 to $1,500 per annum were paid. Plaintiff testified that, since 1919, he has been unable to lease the island for the purposes above stated, on account of the interference of the defendant company in carrying on its present

operations and because of the uncertainty of his title in view of the rights asserted by the water company. The contention of the plaintiff in this respect is, to some extent, substantiated by a letter written by the president of the defendant company in January, 1920, to the Salem Sand & Gravel Company—which had acquired certain sand and gravel rights on the island —admonishing it not to dig sand and gravel near filtering cribs or to "disturb or in any way endanger what work we have already constructed there, * * ."

After careful consideration, we are of the opinion that plaintiff is entitled to a decree enjoining the defendant company as prayed for in the complaint herein, unless within a reasonable length of time it acquires by purchase or condemnation the property rights exercised in excess of those granted by the easement; provided further that, if defendant does not so elect to acquire the rights above mentioned and desires to change its manner of operation so as to conform, in the light of this opinion, to its deed of easement, then the injunction order will be suspended until the defendant has had a reasonable time, after the water covering the island has receded, in which to accomplish such purpose. In the event that defendant elects to institute condemnation proceedings it must be done within sixty days from date of mandate of this court. As to what constitutes reasonable time as specified herein is a matter for the determination of the trial court.

The decree dismissing this suit is reversed and the cause remanded, with directions to proceed not inconsistent with this opinion. Plaintiff is awarded costs and disbursements in this and in the lower court.

REVERSED AND REMANDED.

McBRIDE, C. J., and RAND and COSHOW, JJ., concur.