Argued May 3, affirmed August 2, petition for
rehearing denied September 25, 1973

# WHITE ET AL, *Respondents, v.* BROOKS ET UX, *Appellants.*

512 P2d 1350

*Donald H. Greene,* Portland, argued the cause for appellants. On the brief was Ernest J. Burrows, Portland.

*Edwin J. Peterson* of Tooze, Kerr & Peterson, Portland, argued the cause and filed a brief for respondents.

McALLISTER, J.

This is a declaratory judgment proceeding for a determination of the respective rights of the plaintiffs and the defendants in a driveway located between their homes. The trial court tried the case as a suit in equity and found that both plaintiffs and defendants owned an undivided one-half interest in the driveway with reciprocal, co-equal easements to use the driveway. Defendants appeal.

Plaintiffs own the south forty feet of Lot 7, Block 3, Hawthorne Terrace in Portland. Defendants own Lot 6, Block 3, which adjoins plaintiffs' property on the south. In 1920 one Bell owned lot 7 and one Norby owned lot 6. On March 4, 1920, Bell and Norby entered into an agreement for construction of the driveway between their properties, which reads as follows:

> "THIS AGREEMENT, Made and entered into this 4th day of March, 1920, by and between G B Bell hereinafter known as the party of the first part and W A Norby hereinafter known as the party of the second part, both of said parties residing in

Portland, Multnomah County, State of Oregon, Witnesseth: That,

"WHEREAS the said party of the first part is the owner of Lot Seven (7) in Block Three (3) and the said party of the second part is the owner of Lot Six (6) Block Three (3) both in Hawthorne Terrace as heretofore platted and as the same appears of record in said Multnomah County, Oregon, and

"WHEREAS each of said parties are desirous of building, constructing and maintaining a Driveway to be on the dividing line between both lot 6 and 7, and also to take a portion of said lot 6 and 7 to run from the street into and connecting with the several Garages in the rear of said Lots owned by each of said respective parties herein.

"NOW THEREFORE, it is understood and agreed by and between the above named parties, that each of said parties are to pay one half of all expenses to be incurred in constructing and building said Automobile Driveway on said premises and each are to own an undivided one half interest in and to the same, and to the whole thereof; and in the event that at any time hereafter either of said parties desire to sell their respective piece of property hereinabove named and described, that the Driveway connected therewith shall belong one half to Lot 6 and the other half to Lot 7 Block 3 Hawthorne Terrace, and each of said parties herein waive any right, title or interest in and to the others one half of said Driveway. And that each of said parties will make no claim for any portion thereof, except the undivided one half that each of said parties now possess.

"IN WITNESS WHEREOF * * *."

The above agreement was recorded on March 5, 1920, and was referred to in all subsequent conveyances of both lot 6 and lot 7.

The record does not show exactly when the driveway was constructed. Plaintiff Barbara White testified that her family had lived in the house on lot 7 since 1923, the year of her birth, and that as long as she can remember there was a cement driveway between the two houses. Barbara's mother, according to Barbara was 86 years old and in precarious health and did not testify.

Bell conveyed the south 40 feet of lot 7 to Barbara's mother and father in 1930 and since her father's death in 1964 the title to the White property has been in Barbara and her mother. The Norbys continued to live on lot 6 until 1939 when they sold to Estella Patterson, who, in 1951, sold lot 6 to defendants Brooks. Barbara White testified that from her earliest recollection two identical garages stood at the back of these two lots, one on lot 6 and one on lot 7. The driveway was the only access to the garages and was used for many years by the owners of lots 6 and 7. After the Brooks purchased lot 6 in 1951 the Whites and the Brooks continued to use the driveway for access to their garages. Defendants' garage was removed in about 1964. Plaintiffs' garage is still standing, but there is a dispute about the extent of the White family's use of the driveway after about 1957. Mr. and Mrs. Brooks testified that the Whites ceased to use the driveway for access to their garage in about 1957 when Mr. White purchased a larger car. Barbara, however, testified that her father continued to use the driveway and parked his larger car on the apron in front of his garage until about 1964. The garage was too small for the later model cars. Other witnesses testified that from time to time thereafter the Whites used the driveway for vehicular access to the rear of their premises.

In early 1972 defendants denied plaintiffs' right or interest in the driveway and placed a chain across the driveway at the street to prevent use of the driveway by plaintiffs. Plaintiffs then brought this suit for a declaration of their rights.

A survey of the property, apparently made at the joint request of the parties, shows that the line between lot 6 and lot 7 runs along a retaining wall on the north side of the driveway and that substantially all of the driveway is on lot 6. Defendants contend that the 1920 agreement contemplated that the driveway would be constructed with its center line on the boundary between the two lots and that since the driveway was not constructed in accordance with the agreement plaintiffs acquired no rights of ownership by virtue of the agreement.

The agreement, by its terms, however, does not provide that the line between the two lots shall be the center line of the driveway. It recites that the parties

"* * * are desirous of building, constructing and maintaining a Driveway to be on the dividing line between both lot 6 and 7, and also to take a portion of said lot 6 and 7 to run from the street into and connecting with the several Garages in the rear of said Lots owned by each of said respective parties herein."

As the survey shows, where the driveway runs between the houses, its north line is the retaining wall, which is built on the boundary between the two lots. Behind plaintiffs' house the retaining wall or curb curves to the north and here the driveway widens into an apron area in front of plaintiffs' garage. There was a similar apron area in front of the garage on lot 6. Barbara White testified that the retaining wall has always been in the same location.

█ We believe that the plaintiffs have an interest in the driveway by virtue of the 1920 agreement. The agreement provides that the driveway is to be constructed on the dividing line between the two lots without further specifying its location except that it is to take a portion of each lot. The driveway as constructed runs "on" the line in the sense that it lies along and immediately adjacent to the line and the apron at the rear in front of plaintiffs' garage is on a part of lot 7. Since the agreement recites that the driveway is to run "from the street into and connecting with" the parties' garages the apron portion must be considered as a part of the driveway itself. Although the agreement is somewhat ambiguous as to the precise location of the driveway, the construction of the driveway was consistent with the terms of the agreement.

██ When the terms of a conveyance are ambiguous, the conduct of the parties may be examined to aid in the interpretation. *Belton v. Buesing,* 240 Or 399, 408, 402 P2d 98 (1965); 3 American Law of Property, 384-385, § 12.91. The construction of the driveway in a location not inconsistent with the language of the agreement amounts to "practical construction by the parties." It is strong evidence of the intent at the time of the agreement. We affirm the trial court's decree on that ground.

The record discloses that plaintiffs' garage encroaches upon a portion of lot 6 and the trial court decreed that the plaintiffs are the owners of the property on which their garage is located. Although defendants mention this portion of the decree in their notice of appeal and in their statement of the questions for decision on appeal, they do not assign this

finding as error or attack the finding in their brief. We assume that defendants abandoned their objection to this portion of the decree and it needs no further consideration in this opinion.

The decree of the trial court is affirmed.