Argued and submitted December 1, 1986, reversed and remanded on appeal and
affirmed on cross-appeal March 4, reconsideration denied April 24, petition for review
denied June 16, 1987 (303 Or 534)

# STATE DEPARTMENT OF FISH AND WILDLIFE,
*Appellant - Cross-Respondent,*

*v.*

## KORTGE et al,
*Respondents - Cross-Appellants.*

(CC84-148; CA A37038)

733 P2d 466

David Schuman, Assistant Attorney General, Salem,
argued the cause for appellant - cross-respondent. With him

on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

R. L. Marceau, Bend, argued the cause for respondents - cross-appellants. With him on the brief was Dennis C. Karnopp, Bend.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

## WARDEN, P. J.

Plaintiff brought this action for a declaratory judgment to establish that it could use a parcel of real property it had purchased "for recreation by the general public so long as that use does not unreasonably interfere with defendants' rights" and an injunction prohibiting defendants from posting and enforcing "No Trespassing" signs. Defendants, whose predecessors in title originally conveyed the property to plaintiff's predecessor in title, claimed that, under a reservation in the original conveyance, defendants retained the right to exclude the general public. They also alleged as an affirmative defense that they had fee title to the property by adverse possession. After a trial without a jury, the court entered a judgment that plaintiff has fee title to the property and that defendants have the right to exclude the general public. Plaintiff challenges the latter conclusion. Defendants cross-appeal, contending that the trial court erred in not finding that they had established a prescriptive right to exclude the public.

In 1919, Albert and Rose Roberts owned a parcel of land along the Deschutes River in northern Wasco County. Part of the parcel was a narrow strip lying between the river and a railroad right-of-way, the property here in question. In November, 1919, the Robertses executed a warranty deed conveying the riverside strip to the Eastern Oregon Land Company (EOLC) for $15,000. The deed also granted to EOLC the rights of the grantor to the Deschutes River bed adjacent to the riverside strip, all rights and privileges appurtenant to the riverside strip and

> "the perpetual right, privilege and easement, to be exercised now or at any time hereafter by the said grantee * * * to overflow by the back-waters from any dam which the grantee * * * may construct for hydraulic purposes in the said Deschutes River, the remaining lands now owned by the said grantors * * * adjacent to [the riverside strip]."

The deed reserved to the grantors

> "the right to use the [riverside strip] for agricultural, horticultural or grazing purposes as [they] may see fit, until such time as the grantee * * * shall by construction of the contemplated hydraulic works overflow the same with the back-water from said river, and thereafter [grantors] may continue to use

for such purposes such portion of said premises as are not submerged";

the right to construct on the grantors' remaining property a pumping facility for irrigation purposes and to take 400 acre feet of water yearly from the grantee's reservoir; and the right to water livestock anywhere along the river strip "to which it may be feasible for the said grantors * * * to gain access to the water's edge for said purpose * * *." The grantors also reserved the right to use the river or any reservoir created by the grantee's dam for non-commercial ferrying of persons or livestock or produce or goods "for the convenient use of the adjacent lands now owned by grantors." The deed was recorded in 1923. The Robertses conveyed their interest in the same property to defendants' predecessors in title. Through a series of transactions, defendants are the current owners of whatever interest the Robertses retained for themselves when they executed the EOLC deed in 1919.

EOLC never erected the "hydraulic works" which was contemplated when it acquired the property, and it conveyed the property to the Oregon Wildlife Heritage Foundation in August, 1983. The foundation conveyed the property to plaintiff in November of the same year.

The riverside strip has been used since 1919 by defendants and their predecessors for grazing and watering cattle. Defendants own property which is used for growing wheat on the upland side of the railroad. The railroad is fenced on both sides so that the only passage between the properties is by underpasses beneath the railroad. Defendants have excluded the public from the riverside strip and from their adjacent ranch lands, because they deemed activities of the public (such as smoking, leaving gates open, using motorcycles and jet boats and bringing dogs to the property) not to be compatible with their cattle ranching. After plaintiff purchased the property, it adopted a plan for the use of the strip by the public, primarily for bank fishing during the summer months. Because defendants continued to post and enforce "No Trespassing" signs, plaintiff brought this action.

The first question is whether the scope of our review is as in an action at law, as defendants contend, or as in equity, as plaintiff contends. Because there is evidence in the record sustaining the trial court's findings of fact and because we

would find the same facts, we conclude that it makes no difference what our scope of review is. The controlling question is the legal effect of those facts.

Plaintiff's first assignment of error is that the court erred in entering judgment as follows:

> "Included among defendants' reserved rights is the right of the defendants, their heirs or assigns to use the real property * * * for agricultural, horticultural or grazing purposes as defendants, their heirs or assigns may see fit * * *. This includes the right to exclude the general public from the real property * * * and to post signs on the property in order to exclude the general public."

Plaintiff contends that the court must, in construing the deed, consider the intention of the parties, *Fendall v. Miller,* 99 Or 610, 615, 196 P 381 (1921), and apply a standard of reasonableness. *Minto v. Salem Water etc. Co.,* 120 Or 202, 250 P 722 (1926).

Determining that the original parties intended that the reservation included the right to exclude the general public, the trial court stated:

> "[T]he defendants * * * have what I would designate as a very broad 'Profit a Prendre' is the technical term, often shortened to the term 'Profit'. It is similar to what more people are familiar with as what is called an easement, the difference generally being that an easement usually means the right to go on someone else's land. The term 'Profit a Prendre' shortened as I say, only to 'Profit' means not only the right to go on the land, but the right to remove things from that land. So, in this case the Court finds the Kortges have a very broad 'Profit a Prendre' which gives them the right to continue the use of the property for agricultural purposes in the same manner in which it has been historically used for the last fifty years or so, which includes the right to exclude the general public from the property, but not the right to exclude certain specific agents of the plaintiff from inspecting the property from time to time. That would mean a designated Wildlife or Fisheries agent coming on the property to inspect the property, one to see what is going on on the property; two, to see what is going on along the river, the wildlife situation.

> "The historical consent was important. I am satisfied from the testimony that the 'No Trespassing' signs, the care of who went on there, wasn't something that was just cooked up a few months to bolster the case here. So I think the historic use is

important in that regard because it goes back to help me determine the language 'to farm it as they see fit' means and, since they have seen fit for many many years to farm the property in a way which excluded the public, just because the State now has a deed to the property doesn't automatically then give the public the right to go on the property since that would be inconsistent with the way the property has been farmed."

The record supports the court's finding that defendants and their predecessors had used the property in a manner that excluded the public. From that finding, the court concluded that that was the intent of the original parties. *See White v. Brooks,* 266 Or 506, 512 P2d 1350 (1973).

■ That conclusion, however, does not control our decision. This case does not involve the rights of defendants as against the general public but the rights of defendants as against the fee owner. Whether defendants' rights are in the nature of a profit a prendre or an easement, the interests in this case are governed by the same general rules. *See Jackson County v. Compton,* 289 Or 21, 609 P2d 1293 (1980). The use of an easement is limited to that which is reasonably necessary for the easement's intended purpose. *See Minto v. Salem Water etc. Co., supra.* It follows that

"there remains in the grantor [of the easement] the right of full dominion and use of the land, except as far as a limitation of his right is essential to the fair enjoyment of the right of way which he has granted. And it is not necessary that the grantor should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant." *Miller v. Vaughn,* 8 Or 333, 336 (1880).

■ ■ Plaintiff's fee ownership of the property gives it rights comparable to those of a grantor of an easement. Plaintiff requests a declaration that it can use the property for recreation by the general public *so long as that use does not unreasonably interfere with defendants' rights.* We conclude that plaintiff is entitled to such a declaration as a matter of law. It is entitled to use its land in any way that does not unreasonably interfere with defendants' rights to use the land for agricultural, horticultural or grazing purposes.

The trial court stated: "I am satisfied from the testimony that there are ways that agriculture and recreation can

peacefully coexist." The court declined to adopt a standard of reasonableness but instead determined that defendants could prevent plaintiff's use of the land if it had any effect on defendant's agricultural operations. We agree with plaintiff that the court erred in applying that standard. Because the correct standard requires factual determinations, we remand for the court to determine what uses plaintiff may make of its land, which may be limited only to the extent that they *unreasonably* interfere with defendants' agricultural rights.

■ Defendants cross-appeal, contending that the trial court erred in not finding that they had established a prescriptive right to exclude the public from the strip. In their pleadings, defendants contended that they owned the disputed property in fee simple by adverse possession. Nowhere did they plead or argue that they had acquired a prescriptive right. They raise that theory for the first time on appeal, and we therefore decline to consider it. *See Woods v. Hart,* 254 Or 434, 438, 458 P2d 945 (1969); *Drury et ux v. Pekar et al,* 224 Or 37, 43, 355 P2d 598 (1960); *Rasmussen v. Winters,* 82 Or 674, 679, 162 P 849 (1917).

Reversed and remanded on appeal for proceedings not inconsistent with this opinion; affirmed on cross-appeal.