Argued and submitted August 20, affirmed October 27,
reconsideration denied December 4,
petition for review denied December 23, 1980 (290 Or 271)

MILLER, et al,
*Appellants,*

*v.*

GEORGIA-PACIFIC CORPORATION,
*Respondent.*

(No. 39760, CA 16165)

618 P2d 992

J. Rion Bourgeois, Portland, argued the cause for appellants. With him on the briefs was Evans, Grebe, Gross, Jensen & Peek, P.C., Portland.

Donald A. Gallagher, Jr., Eugene, argued the cause respondent. With him on the brief was Jaqua & Wheatley, P.C., Eugene.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

This is a suit by the plaintiffs for a declaratory judgment as to the "meaning and effect" of a written instrument by which the plaintiffs had previously granted a road easement to the defendant. In the alternative the plaintiffs sought reformation of the instrument on the grounds of mistake.[1] The trial court held that the defendant's interpretation of the written instrument was correct. It also held that the instrument was not ambiguous and denied reformation. The plaintiffs have appealed. We affirm.

The plaintiffs are husband and wife. They are loggers and ranchers in the Siletz area of Lincoln County. The defendant is a forest products corporation and the owner of a rock quarry near a part of the plaintiffs' land.

In July, 1963, the defendant entered into an agreement with Macco Corporation whereby that corporation was given the right to haul rock from the quarry to repair and extend the north jetty at Yaquina Bay. The defendant granted Macco Corporation the right of ingress and egress to Highway 229 over the Root Creek road. The defendant and Macco Corporation also contracted to cooperate in acquiring an alternate truck road right-of-way along Cedar Creek to Highway 229. The proposed right-of-way along Cedar Creek would cross lands owned by the plaintiffs.

The negotiations for the Cedar Creek easement were conducted by Tim Miller on behalf of the plaintiffs and by Harold Rumery on behalf of the defendant. Rumery was the local logging manager for the defendant. The negotiations between Tim Miller and Rumery were conducted in Lincoln County between the 1st and the 15th of August, 1963. It was agreed that the defendant would convey to the plaintiffs approximately 22-1/2 acres of land in exchange for a 60 foot right-of-way along Cedar Creek.[2] On

---

[1] The plaintiffs also sought an injunction and damages. Because of the result we reach we do not consider those matters.

[2] The area of the 60 foot easement was 3.64 acres.

August 15th all the documents were prepared by the defendant's in-house counsel in Portland. The counsel then forwarded the documents to Rumery in Lincoln County. On August 19, 1963, the plaintiffs executed the following easement in the office of their local attorney in Lincoln County:

"ROAD EASEMENT

"KNOW ALL MEN BY THESE PRESENTS, That for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, receipt of which is hereby acknowledged, TIM MILLER and MYRL F. MILLER, husband and wife, hereinafter called 'Grantors', do hereby grant, bargain, and convey to GEORGIA-PACIFIC CORPORATION, a Georgia corporation, and its successors and assigns, hereinafter called 'Grantee', an easement and right of way, sixty (60) feet in width, for the purpose of locating, constructing, maintaining, repairing and using a roadway over and across portions of the SW 1/4 NW 1/4 and the W 1/2 SW 1/4 of Section 8, Township 9 South, Range 10 West of Willamette Meridian, the centerline of which is described as follows:

"* * * * * [Description omitted.]

"PROVIDED, however, that Grantee's right to use said easement and right of way for commercial rock hauling shall be limited to a period of ten (10) years from the date hereof unless the period for commercial rock hauling shall be extended for a further and continuous ten (10) year period by the exercise of the option to do so hereby granted to Grantee by Grantors, which option shall be exercised by Grantee placing the record on the Official Records of Lincoln County, Oregon notice of exercise of said option.

"RESERVING unto Grantors the personal right to use for ingress and egress and without fee any road constructed on said easement and right of way, provided that such use does not interfere with the use thereof by Grantee or its licensees.

"* * * * *." [Acknowledgment omitted.]

Tim Miller testified that he did not remember reading the instrument before he signed it. He signed it because his attorney (now deceased) said: "It looks

all right." Myrl Miller testified that she did not read the easement before she signed it.

Between August 15th and August 19th as a part of the same transaction there were also prepared by the defendant and executed by the appropriate parties: (1) a letter to Tim Miller confirming defendant's obligation to construct fence, gates, culverts, and cattleguards; (2) deeds conveying the 22 1/2 acres to Tim Miller; (3) a letter to Tim Miller confirming defendant's agreement to pay the taxes on the easement; (4) a common boundary agreement between the plaintiffs and other land owners in the area; and (5) a letter to Tim Miller confirming that the defendant would not grant some people by the name of Calkins the right to use the road to be constructed on the easement.

The road constructed upon the Cedar Creek easement was used by Macco Corporation to haul jetty rock from 1964 through 1966. Since 1966, with the exception of three years, the easement has been used by the defendant and its licensees for the hauling of non-jetty rock. For example, in 1967, Pacific Crushing hauled 73,000 plus cubic yards of non-jetty rock and in 1977 the defendant hauled 100,000 plus cubic yards.

On August 8, 1973, the defendant exercised its option to extend the period of commercial rock hauling for an additional ten years by recording a notice in the "Official Records of Lincoln County" as required by the easement.

On February 5, 1974, plaintiffs' attorney wrote the defendant's president that Tim Miller was concerned because the easement was currently being used to haul non-jetty rock.[3]

---

[3] It appears that the letter of February 5, 1974, was the result of Tim Miller's first reading of the easement:

"Q [Defendant's attorney] Now, when is the first time that you actually recall reading this [easement]? Was that back in '74 or something?

"A [Tim Miller] In '74 when I went and got it out and read it in there. I seen [*sic*] it wasn't what it was supposed to be, so I called Mr. Evans."

On April 27, 1978, the plaintiffs filed their complaint for a declaratory judgment in this case. The second amended complaint alleged by reference the August 19, 1963 road easement and set forth the contentions of the parties as to the "justiciable controversy" as follows:

"* * * * *

"IV

"Plaintiffs contend the easement granted thereby was for a term of 10 years, with an option for an additional 10 years upon payment of further consideration, with the extent of use limited to jetty rock hauling.

"V

"It is the defendant's contention that the road easement granted may be used for any purpose including commercial rock hauling until August 18, 1983, can be used by defendant for any purpose other than commercial rock hauling thereafter, and has an unlimited duration.

"* * * * *."

The defendant by its answer admitted paragraphs IV and V as set out above.[4]

The alternative count of the plaintiffs' second amended complaint alleged in part:

"* * * If this court decides the instrument fails to have that effect, then the failure is due either to the mutual mistake of the parties, or to the unilateral mistake of the plaintiffs and the inequitable conduct of the defendant, and should therefore be reformed * * *."

The trial court ruled as a pretrial matter that the easement was not ambiguous. After the trial on the merits the trial court again ruled that the easement was not ambiguous and denied reformation. The decree entered reads in part:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the August 19, 1963 ROAD EASEMENT grants defendant a permanent easement and

---

[4] The defendant by way of affirmative defenses alleged laches and adverse possession. Because of the result we reach we do not consider the affirmative defenses.

right-of-way for the purpose of locating, constructing, maintaining, repairing and using a roadway over and across the lands of the plaintiffs reserving unto plaintiffs the personal right to use said roadway for ingress and egress and without fee provided such use does not interfere with the use thereof by defendant or its licensees; provided however, that the right-of-way can only be used for commercial rock hauling for a period of 20 years from August 19, 1963; * * *.

"* * * * *."[5]

■    The plaintiffs have set out numerous assignments of error. The chief thrust of these assignments is that the trial court erred in finding that the easement of August 19, 1963 was not ambiguous. Subparts of this general assignment are that the trial court erred in failing to consider all of the writings constituting the contract of the parties and in failing to apply the rule of construction that an ambiguous contract is to be construed against the party who drafted it. The plaintiffs also claim in the alternative that the trial court erred in not reforming the contract.

The plaintiffs claim that the easement is ambiguous in at least five particulars: (1) Use of easement — limited to the hauling of rock? (2) Type of rock — jetty rock or commercial rock? (3) Term of agreement — limited to 10 or 20 years or unlimited? (4) Further consideration — was the 22 1/2 acre conveyance consideration for only the first ten years? (5) Licensees — were the defendant's licensees limited to Macco Corporation?

It is the plaintiffs' position that each of the five alleged ambiguities should be resolved in their

---

[5] The plaintiffs in their brief in this court contend:

"* * * Judgment and Decree on its face appears to construe the easement document in at least one respect in favor of the plaintiffs, limiting the defendants' use for the first twenty years to commercial rock hauling * * *."

We think that the plaintiffs' interpretation is incorrect. The trial court simply decreed that the defendant's easement was permanent, except that commercial rock hauling thereon was limited to a period of 20 years. ORS 93.120.

favor and against the defendant who drafted the easement. *Meskimen v. Larry Angell Salvage Co.,* 286 Or 87, 592 P2d 1014 (1979). Therefore, the plaintiffs contend that the easement should be limited to the hauling of jetty rock by Macco Corporation for a period of ten years to be renewed upon the negotiation of additional consideration for an additional ten year period.

On the other hand, the defendant contends that the easement is not ambiguous, that it means what it says and that the terms of a writing are presumed to have been used in their generally accepted sense. ORS 42.250. The defendant says the term and use of the easement is unlimited, except that the hauling of commercial rock is limited to 20 years, and that no additional consideration was necessary for the additional ten year period.

To support their position the plaintiffs rely for the most part upon the testimony of Tim Miller and Harold Rumery. They testified they negotiated for the hauling of only jetty rock. Tim Miller at first demanded 40 acres but eventually agreed upon the 22-1/2 acres for the first ten years with the consideration for the second ten-year period to be left open for negotiation. Rumery testified that the defendant wanted an easement to haul jetty rock for ten years for the Macco job with an option for an additional ten years if another jetty job materialized.[6]

We review de novo, but give weight to the trial court's findings as to the credibility of the witnesses. We discount the testimony of Tim Miller and Harold Rumery. The trial started on August 22, 1979. The easement was signed on August 19, 1963. A period of 16 years and 3 days had elaped from the execution of the easement to the trial of the case. We find that the lapse of time reduced the ability of the witnesses to

---

[6] This is not the only testimony by Tim Miller and Harold Rumery which is favorable to the plaintiffs' position. We do not want to extend this opinion by going through a step by step analysis of the testimony of each witness. We refer to the above testimony because it goes to the heart of the plaintiffs' position.

remember the details to which they testified. Tim Miller is a party — he has an interest in the outcome of the case. Harold Rumery was terminated by the defendant in 1966 and as a result still has a degree of bias.[7]

Without the testimony of Tim Miller and Harold Rumery the documentary evidence in the record has little meaning and a detailed discussion of each document is pointless. We agree with the trial court. We find that the easement of August 19, 1963, is not ambiguous. In construing the easement we have taken into consideration the circumstances under which it was made, including the situation of the subject and the parties, so that we might, as near as possible, be placed in the position of those whose language we are interpreting. ORS 42.220. In construing the easement we have also taken into consideration all of the written instruments executed by the parties between August 15, 1963 and August 19, 1963 in connection with the transaction. *Hays v. Hug,* 243 Or 175, 412 P2d 373 (1966).

As the plaintiffs rely upon the same evidence to prove their alternative suit for reformation based upon mistake we find that it was not proved.

The plaintiffs have only one assignment of error not directly related to the questions of ambiguity or reformation. They contend that the trial court erred in failing to find that the defendant's use of the road as a helicopter launching pad was beyond the scope of the easement.

The evidence of defendant's use of the road by helicopters is sketchy — one day the defendant's

---

[7] The trial court wrote in its memorandum opinion:

"* * * * *

"Thus, it appears to the court that Mr. Rumery's testimony before the court in August of 1979, some sixteen years after the event is either clouded by time, which well it might be, or perhaps influenced by bitterness arising out of his firing by the defendant, which he freely admitted he harbored. I would prefer to think it was the former.

"* * * * *."

helicopter dropped some cedar bolts along the roadside to be picked up by a truck and on another occasion the defendant apparently attempted to use the roadside as a base for its helicopter to fertilize land in the area, but was "run off" by the plaintiffs. The use by the defendant has not been continuous and therefore does not justify the issue of an injunction.

■ ■ The right of the easement owner and the right of the land owner are limited, each by the other, so that there may be reasonable use by both. *Minto v. Salem Water Etc. Co.,* 120 Or 202, 250 P 722 (1926). The reasonableness of the use of an easement depends upon the circumstances of each case. *Jones et ux v. Edwards et ux,* 219 Or 429, 347 P2d 846 (1959). We do not have enough evidence in this case to decide the limits of reasonableness as to casual use by helicopters. In other words, the plaintiffs have not sustained their burden of proof.

Affirmed.