Argued and submitted June 25, reversed and remanded with instructions
November 7, 1990

## Jacob C. WAGNER
and Rosa Lee A. Wagner,
*Appellants,*

*v.*

## Michael O'CALLAGHAN
and Theresa R. O'Callaghan,
*Respondents.*

### (88-2996; CA A61741)

800 P2d 309

Allyn E. Brown, Newberg, argued the cause for appellants.

With him on the briefs was Brown, Tarlow & Berry P.C., Newberg.

Eugene K. Richardson, Newport, argued the cause for respondents. With him on the brief was Richardson, Ouderkirk & Hollen, Newport.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

### DEITS, J.

Plaintiffs are the owners of a one-acre parcel of real property in Lincoln County identified as Tax Lot 601. Their lot is bordered by the Salmon River on the north, by property owned by the Dyers on the west and by Tax Lot 600, owned by defendants, on the south and east. See the Appendix. Plaintiffs' parcel has access to Oregon Highway 18 by a 10-foot roadway easement on the southern and western boundaries of defendants' property. Plaintiffs contend that defendants' erection of a fence has interfered with their access to their property. They filed an action seeking equitable relief. The trial court dismissed their claims, and they appeal. On *de novo* review, we reverse.

Plaintiffs' and defendants' properties were under common ownership until 1966, when the former owners of the property partitioned it and conveyed plaintiffs' parcel, Tax Lot 601, along with the easement, to the Helsels, plaintiffs' predecessors in interest. The property subject to the easement was identified by a metes and bounds description, and the easement was described as being "for a roadway." Defendants purchased their parcel in 1968, taking title subject to the easement. Plaintiffs' parcel was not developed until 1982, when the Helsels moved a mobile home onto the property. The Helsels later surveyed the easement and cleared the roadway to allow access to their property. Relations between the Helsels and defendants eventually became hostile, and defendants constructed a fence along the interior boundaries of the easement. The roadway subject to the easement has a corner of approximately 90 degrees, and the location of the new fence made the passage at the corner quite narrow. See the Appendix. That apparently did not cause the Helsels any problems, however, because they could drive onto the adjoining property, owned by the Dyers, as was necessary to negotiate the corner.[1]

In 1984, plaintiffs purchased Tax Lot 601, including the easement, from the Helsels. Soon after plaintiffs acquired the property, defendants erected a new barbed wire and metal post fence along the outside of the easement on the southern and western boundary of their property. Plaintiffs were no

---

[1] Plaintiffs eventually purchased a 10-foot easement from the Dyers to protect this access. That easement runs adjacent to the easement that is in issue in this case.

longer able to drive onto the Dyers' lot to negotiate the right angle turn in the roadway and, consequently, they were unable to make the turn with either their car or recreational vehicle.

The parties attempted to negotiate a solution to the problem, and plaintiffs believed that defendants had agreed to expand the easement to round the inside corner. However, defendants refused to grant the additional easement. Plaintiffs brought this action, seeking equitable remedies, including an injunction preventing defendants from obstructing the easement, establishment of a 12-foot wide easement by necessity, specific enforcement of the alleged agreement with defendants and an injunction preventing defendants from obstructing their access to the additional easement that plaintiffs had purchased from the Dyers. The trial court denied all of plaintiffs' claims for relief and entered judgment for defendants.

■■    Plaintiffs first argue that defendants are unreasonably interfering with their use of the easement and that defendants have no right to erect a fence on the property over which the easement runs. Owners of an easement do not *ipso facto* have an exclusive right to the use of the property over which the easement runs. In *State Department of Fish and Wildlife v. Kortge,* 84 Or App 153, 158, 733 P2d 466 (1987), we said:

> " '[T]here remains in the grantor [of the easement] the right of full dominion and use of the land, except as far as a limitation of his right is essential to the fair enjoyment of the right of way which he has granted. And it is not necessary that the grantor should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant.' *Miller v. Vaughn,* 8 Or 333, 336 (1880)."

As we stated in *Espedal v. Stone,* 88 Or App 138, 140, 744 P2d 585 (1987):

> " 'The right of the easement owner and the right of the land owner are limited, each by the other, so that there may be reasonable use by both.' " (*Quoting Miller v. Georgia-Pacific,* 48 Or App 1007, 1016, 618 P2d 992, *rev den* 290 Or 271 (1980).)

Accordingly, if the fencing of a boundary line does not interfere with the use of an easement for the purposes for which it was granted, it is permissible for a land owner to do so.

■     In this case, however, the boundary line fence significantly interferes with plaintiffs' use of their easement. The parties originally intended that the easement be used for road purposes, as evidenced by the 1966 conveyance. That purpose is substantially frustrated by the fence. In addition, the erection of the fence on the exterior boundary line is not necessary to defendants' reasonable use of their property. Defendants contend that the fence is necessary to comply with ORS 607.501, which prohibits persons from allowing cattle to run at large. However, defendants' livestock are restrained by the fence erected on the interior boundary of the easement. The exterior boundary line fence, therefore, is not necessary for this purpose. Reasonable access to plaintiff's property can be achieved by the removal of the fence, and it can be removed without undue hardship to defendants. Accordingly, we conclude that defendants must be enjoined from unreasonably interfering with plaintiffs' use of the roadway easement and that they must remove the fence along the western and southern exterior boundary of their property, adjacent to plaintiffs' easement.

Defendants argue, relying on *Parker v. Marshall,* 284 Or 745, 747, 588 P2d 40 (1978), that requiring the removal of the fence is not a proper remedy, because it would allow plaintiffs to enter and leave adjacent land from points along the easement, between the point of ingress and egress; in other words, they could enter the easement from the Dyers' property. Their reliance on *Parker,* however, is misplaced. In that case, the owners of a dominant estate attempted to use the easement to provide access not only to the dominant estate, but also to additional lands adjacent to or beyond the dominant estate. That is not the case here. Plaintiffs are merely seeking to make reasonable use of their easement to gain access to the land for the benefit of which the easement was granted.

Plaintiffs also seek an easement by necessity across defendants' land, following the course of the existing easement, but widening it to a width of 12 feet and including additional land at the corner. In view of our disposition of the first assignment of error, there is no necessity for an additional easement.

Plaintiffs' final assignment of error concerns the

alleged oral agreement between the parties to amend the existing easement. We find that there was not a final agreement regarding the sale and purchase of an additional easement.[2]

Reversed and remanded with instructions to enjoin defendants from unreasonably interfering with plaintiffs' use of the roadway easement and to specifically require defendants to remove the fence along the western and southern boundaries of the property, adjacent to plaintiffs' easement.

---

[2] Because we find that there was no final agreement, we do not address the applicability of the Statute of Frauds.