Argued and submitted January 17, reversed and remanded for entry of judgment
May 9, 2001

# Linda L. CRAFT,
*Respondent,*

*v.*

# Jean WEAKLAND,
*Appellant.*

# 941181; A101945

23 P3d 413

George W. Kelly argued the cause and filed the briefs for appellant.

J. Christopher Minor argued the cause for respondent. With him on the brief was Minor, Bandonis & Connell, P. C.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

**LINDER, J.**

Defendant, the owner of property burdened by an easement, seeks reversal of a judgment in which the trial court found that defendant willfully violated a previous judgment relating to the easement and ordered her to remove a fence, gate, and windscreens that she had installed within the easement. We review *de novo*, ORS 19.415(3); *Clark v. Kuhn*, 171 Or App 29, 31, 15 P3d 37 (2001), and reverse and remand.

Plaintiff and defendant each own beachfront property in Lincoln County. Plaintiff also holds an easement in a portion of defendant's property. The easement, which is 10 feet wide and approximately 75 feet long, runs along the boundary of defendant's property from a public road to a bluff overlooking the beach and the Pacific Ocean. The easement was first recorded in 1955 when property encompassing plaintiff's and defendant's properties was divided and the dominant estate was deeded to plaintiff's predecessors in interest.[1] The purpose of the easement is for "ingress and egress" to the beach.

In 1994, plaintiff brought an action seeking a declaration relating to her rights in the easement. In 1995, the trial court entered an order in which it determined that plaintiff held the easement for the purpose of ingress and egress and permanently enjoined and restrained defendant from "interfering with plaintiff's right to use the easement[.]" Defendant appealed, and this court affirmed without opinion. *Craft v. Weakland*, 145 Or App 482, 928 P2d 366 (1996).

At some time after entry of the 1995 order, plaintiff arranged for the easement to be surveyed. In the course of performing the survey, surveyors removed vegetation from the easement. Defendant later installed a gated fence across the end of the easement overlooking the beach; the gate has a latch but no lock. She also installed several two- to three-foot-wide windscreens made of metal pipe and bamboo, which she

---

[1] A subsequent subdivision plat, recorded in 1957, referred to the strip of land comprising the easement as a "private walkway."

placed at various and staggered points along the length of the easement.

Plaintiff filed a petition for supplemental relief, seeking removal of the windscreens and seeking to enjoin defendant from erecting "barriers," including any "man-made or artificially-placed obstruction," that "interfere with reasonable and direct ingress and egress" by plaintiff, her guests, and her workers. Plaintiff further sought to enjoin defendant from denying reasonable access to workers hired by plaintiff. After hearing evidence, the trial court concluded that defendant had "clearly and willfully disobeyed" the court's 1995 order. As noted above, the court ordered defendant to remove the gated fence and windscreens and enjoined her from erecting other barriers and denying access to plaintiff's workers. This appeal resulted.

In her first, second, and third assignments of error, defendant argues that the trial court erred in, respectively, ordering removal of the fence and gate, ordering removal of the windscreens, and enjoining defendant from erecting "any * * * barriers * * * interfering with plaintiff's use of the easement." Defendant argues that, as a factual matter, any interference with plaintiff's use of the easement for the purpose of ingress and egress to the beach was "minimal" and that the fence and gate served substantial security- and erosion-related purposes. Defendant argues that, as a matter of law, an easement owner's use of an easement is limited to those uses that are reasonably necessary for the easement's intended purpose, that the owner of the servient estate also has a right to make reasonable use of the land, and that the rights of the owners of the dominant and servient estates therefore are mutually limiting. As a result, in defendant's view, the trial court's order exceeds its authority regarding defendant's use of her property. Plaintiff responds that the easement granted unrestricted use and that the "aggregate" interference caused by the fence, gate, and windscreens was substantial.[2]

---

[2] In a fourth assignment of error, defendant argues that the trial court erred in finding that her violation of the 1995 order was willful. Because of our disposition of this case, we do reach that issue. Also, defendant assigned error to the trial court's award of attorney fees. The parties now agree that that assignment of error is moot.

 In construing an easement, we seek to discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner. *Watson v. Banducci*, 158 Or App 223, 230, 973 P2d 395 (1999) (citing *Bernards et ux. v. Link and Haynes*, 199 Or 579, 593, 248 P2d 341 (1952), *on reh'g* 199 Or 579, 263 P2d 794 (1953)). *See also Clark*, 171 Or App at 34 (the scope of an easement is defined not by its physical characteristics but by its purposes). To determine an easement's purpose, we look first to the words of the easement, viewing them in the context of the entire document; if the words clearly express the easement's purpose, our analysis ends. *Watson*, 158 Or App at 230 (citing *Tipperman v. Tsiatsos*, 327 Or 539, 544-45, 964 P2d 1015 (1998)). In giving effect to an easement's purpose, general principles of reasonableness control. *Watson*, 158 Or App at 231. "[A]n easement holder can make only such use of an easement as is *reasonably necessary* to accomplish the purpose for which the easement is granted and the remaining dominion over the land upon which the easement lies continues with the servient landowner." *Clark*, 171 Or App at 33 (emphasis added). As the Supreme Court stated in *Miller v. Vaughn*, 8 Or 333, 336 (1880):

> "When an easement is granted, nothing passes as an incident to such grant but what is *necessary* for its reasonable and proper enjoyment. And notwithstanding the grant, there remains in the grantor the right of full dominion and use of the land, except so far as a limitation of his right is essential to the fair enjoyment of the right of way which he has granted."

(Emphasis added.)

 An action for interference with an easement requires a showing of a "substantial" or "unreasonable" interference with the grantee's right to use the easement. *Landauer v. Steelman*, 275 Or 135, 141, 549 P2d 1256 (1976); *Marsh v. Pullen*, 50 Or App 405, 409, 623 P2d 1078, *rev den* 290 Or 853 (1981). Whether an interference is substantial turns on whether the conduct of the servient estate owners deprived the dominant estate owners of a degree of use to which they were entitled by the easement. *Marsh*, 50 Or App at 409. "Owners of an easement do not *ipso facto* have an *exclusive* right to use the property over which the easement runs."

*Wagner v. O'Callaghan*, 104 Or App 284, 287, 800 P2d 309 (1990) (emphasis added). Plaintiff has the burden of showing that the interference with her use of the easement was substantial. *Id.*

As observed above, the easement in this case is for "ingress and egress." The 1995 judgment declaring plaintiff's rights in the easement restates that purpose; in addition, it "permanently enjoin[s] and restrain[s]" defendant "from interfering with plaintiff's right to use the easement[.]" Nothing in the 1955 deed or the 1995 order purports to establish rights in the easement beyond the ordinary rights of use appurtenant to any easement. We therefore consider whether plaintiff met her burden to show that defendant's interference with plaintiff's use of the easement for the prescribed purpose was "substantial."

Testimony at the hearing on plaintiff's petition for supplemental relief indicated that, although the easement is 10 feet wide, it is traversed by means of a narrower pathway that runs through shrubbery and down the approximate middle of the easement. The testimony also indicates that the ground is basically level. Regarding defendant's interference with plaintiff's use of the easement, plaintiff testified that there were "three or four" windscreens along the pathway and that, as a result of their placement, "you can't walk directly out the path * * * you have to meander and wind to wade through them. And they've narrowed the path." She testified that she considered the pathway "obstructed" by the fence and gate; she described the gate as "very narrow. * * * It's very tall and it's simply a barrier when you get there" and testified that "I have to reach up there and open it. I get into the bushes when—in trying to pull open the gate." She testified that, when she brought other people onto the easement, they were "able to get through, but not necessarily easily." Plaintiff's adoptive mother testified that she "cannot easily open the gate and get past the brush and get through it and that she has "difficulty" maneuvering around the windscreens.[3]

---

[3] Plaintiff also offered in evidence the affidavit of her adoptive mother, in which the latter attested that the "barriers" along the pathway "make it difficult to

Defendant testified that, at the time she bought the property, the pathway through the easement was a "narrow winding path" and that, since purchasing the property in the 1970s, she has kept the pathway "open." She said that the removal of vegetation by surveyors in 1995 had resulted in making the pathway more visible from both the beach and the street and that she erected the windscreens to make the path less visible to members of the public who might otherwise enter onto the easement, as well as to block wind that formerly had been blocked by the vegetation. As to two of the screens, defendant described the edge of one screen as aligned with the opposite edge of the other, "so that you do have to slightly go around it. And the last three are just in line and you just walk alongside of them." In response to a question, defendant agreed that, in walking along the path, she was not impeded by the windscreens and that the path is wide enough to walk along "without even confronting the windscreens." She also testified that the gate has never been locked and that it opens "easily." Defendant had observed plaintiff and other persons walking along the pathway and never had observed any of them having any difficulty, nor had plaintiff ever complained to defendant of any difficulty. Defendant's housemate testified at the hearing that the pathway was "definitely" sufficient for ingress and egress, that she had seen people "hustling along," and that she had never observed anyone having any difficulty getting through. She described the windscreens as mitigating the impact of the wind on defendant's property and testified that they also helped make the path less visible to trespassers.

A geologist who had examined the site testified that the fence had no "major impact" as to erosion control. He said that wind was a minor factor in regard to erosion of the bluff and that the windscreens, which he described as being two feet wide and eight feet tall and as being placed in a "staggered" formation, were not of significant benefit. He explained that "you need to walk, kind of weave around the windscreens. But that would be part of their function." He

---

access" the bluff and that they "have interfered" with her use of the easement. We disregard the latter statement because it consists of a legal conclusion.

said that walking along the easement pathway "wasn't particularly difficult for me." A surveyor who had worked on the property testified that the walkway was "very, very neatly landscaped" and that he was able to "get by" the windscreens with his equipment without difficulty.

The parties each offered photographs of the easement and defendant offered a videotape showing her housemate traversing the pathway in both directions and opening the gate. Those items of evidence indicate that the pathway readily permits passage of at least one person at a time, including passage past the windscreens. They also indicate that, although the gate latch is at the top and disengaging it therefore requires reaching up, opening the gate does not require one to walk into shrubbery, the gate opens at least 90 degrees, and it readily permits one person to pass through.[4]

On balance, and considering the evidence *de novo*, we conclude that plaintiff failed to meet her burden to show that interference with her easement rights caused by the gated fence and windscreens was substantial. Again, the scope and purpose of the easement in this case is for "ingress and egress." Giving particular weight to the objective evidence (*e.g.*, photographs and videotape of the pathway) and the testimony of the disinterested witnesses, we conclude that plaintiff can reasonably accomplish the easement's purpose despite the windscreens and gated fence. *Compare Marsh*, 50 Or App at 409 (easement was "blocked to traffic" by parked cars). Stated another way, removal of those structures does not appear to be essential to plaintiff's ingress and egress to the beach. *See Clark*, 171 Or App at 35 (despite occasional inconveniences experienced by the easement holder in traversing the easement, the court could not say that building a two-lane paved roadway was *"essential* to" the

---

[4] Both plaintiff and defendant also offered evidence regarding alleged interference caused by vegetation (including a particular tree), sprinklers, and irrigation lines on or near the easement. The trial court, however, did not order defendant to remove any of those items, and plaintiff does not cross-appeal from the judgment. Accordingly, in considering whether defendant substantially interfered with plaintiff's use of the easement, we do not consider the vegetation (including the tree), the sprinklers, or the irrigation lines. Also, because defendant does not assign error to the trial court's order regarding worker access to the easement, we do not consider evidence relating to such access *per se.*

easement holder's ingress and egress to his property (emphasis in original)).

Conversely, on this record, removal of the windscreens and gated fence would impose an unreasonable interference with *defendant's* use of *her* property. Defendant testified that the windscreens mitigated the effects of the wind and helped make the pathway less visible to the public. Defendant's housemate testified that the fence and gate were intended to keep out trespassers. Even assuming, consistently with the testimony of the geologist, that the structures lacked any significant erosion-related effects, those items nevertheless appear to be "reasonably necessary" for defendant's enjoyment of her property in at least one respect, namely, security. *See Ericsson v. Braukman,* 111 Or App 57, 62, 824 P2d 1174, *rev den* 313 Or 210 (1992) (the owner of a servient estate may erect a gate across the easement if the reasonable use of the easement makes a gate—even a locked gate—necessary, for example to keep out trespassers).[5] Indeed, the record also reflects that plaintiff has sought a permit to construct a stairway to facilitate access from the easement to the beach and that she intends to have a *locking* gate in connection with that possible structure. That proposal on plaintiff's part lends legitimacy to defendant's security concerns.

For the above reasons, we conclude that plaintiff did not meet her burden to show that defendant substantially interfered with her rights in the easement.

Reversed and remanded for entry of judgment for defendant.

---

[5] We note that the trial court sustained plaintiff's relevancy objection to defendant's testimony regarding her security concerns. Defendant does not assign error to that ruling; given our disposition of this case, it would in any event have been harmless error.