Argued and submitted January 21, reversed and remanded (1) with instructions to enter modified judgment allowing defendant to construct an electronic replacement gate with intercom at location of the existing gate, deleting the requirement that defendant must construct a fence along the western boundary of his property, permitting defendant to construct a fence along the northern boundary of his property; and (2) for further proceedings to determine whether defendant may construct a second gate at the boundary between the parties' properties; otherwise affirmed November 17, 2010

## Joe BOLDUC
and Dixie J. Bolduc,
*Plaintiffs-Respondents,*

*v.*

## Brian THOMPSON;
Lakes End, LLC;
and Brian Thompson,
Trustee of the Brian Thompson Trust
Dated April 27, 2004,
*Defendants-Appellants.*

Curry County Circuit Court
05CV0801; A134700

245 P3d 131

Michael D. Vergamini argued the cause for appellants. On the opening brief were Amy S. Campbell and Ball Janik LLP. On the reply brief was Michael Vergamini.

George W. Kelly argued the cause and filed the brief for respondents.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Although it is said that good fences make good neighbors, sometimes, they make messy lawsuits. This is such a case. Plaintiffs possess an easement to use a roadway across the northern portion of defendant's[1] property to obtain access to their property. Defendant plans to construct a gate across the easement and to build a fence connecting that gate to the boundary between the parties' properties. Plaintiffs objected and initiated this action for declaratory and injunctive relief to resolve the dispute. The trial court allowed the construction of the gate, but it imposed significant limitations on its nature, including that it be electric and installed with an intercom accessible to plaintiffs. It also ordered that any fence not be located at the boundary between the properties, but rather at the southern boundary of the easement itself, leaving a portion of defendant's property unfenced. Defendant appeals, challenging the trial court's ruling as to the nature of the gate that he may install and its ordered location of any fence on his property. On *de novo* review, ORS 19.415(3) (2007),[2] we reverse and remand for entry of a modified judgment.

## I. FACTS

We begin with a statement of the facts that provide background for our discussion of the case generally and include in our discussion of each assignment of error any additional facts pertinent to our disposition of those assignments.

Plaintiffs and defendant own neighboring parcels in rural Curry County. (See attached appendix.) Plaintiffs' land is rectangular and lies north of and adjacent to the northwest corner of defendant's land; thus, they share a common boundary for the length of plaintiffs' southern boundary. Both parties purchased their respective properties in 2001. At that

---

[1] Although there are multiple defendants in this case—Brian Thompson, Lakes End, LLC, and Brian Thompson as trustee of the Brian Thompson Trust—for ease of reference we refer to defendants in the singular throughout this opinion.

[2] ORS 19.415, which governs our standard of review in this case, was recently amended. Or Laws 2009, ch 231, §§ 2-3. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal in this case was filed before that date, the amendments do not apply.

time, both accessed their land from the west by a road across a neighbor's parcel. That road intersected with the western boundary of defendant's property. From that point, another road (the easement road) crosses the northern portion of defendant's property for approximately 200 feet before turning to the south. The parties agree that plaintiffs have an easement for ingress and egress 20 feet wide over the easement road for the first 168 feet, although the conveyance of that easement interest is not in the record. The easement road abuts the shared boundary for a continuous stretch of undetermined length near the end of plaintiffs' easement. Plaintiffs have generally leased a home and garage that they constructed on the property. They and their tenants access the living area by crossing the shared boundary at a point where the easement road abuts plaintiffs' property. At that point, plaintiffs have developed a gravel driveway and parking area. Defendant also uses the easement road to access a home that is located across the road from plaintiffs' home and garage, as well as outbuildings and fields on the southern portion of his property.

In 2002, the neighbor filed suit to bar both plaintiffs and defendant from using the access road across her property. That litigation resulted in a joint settlement agreement. The joint settlement agreement shifted access for plaintiffs and defendant off of the neighbor's road to a public alley that lies adjacent to defendant's western boundary. In addition, because that pubic alley is only 10 feet wide and the neighbor owns the property to the west of the alley, the neighbor granted plaintiffs and defendant an easement to use an additional 10 feet west of the alley, effectively widening the access road to 20 feet. The new access road approaches and connects with the easement road from the south.

As part of the joint settlement agreement, defendant agreed to grant plaintiffs an additional easement for ingress and egress in the shape of an isosceles triangle with two 25-foot legs. The two equal legs of the triangle extend east and south from a point consisting of the western boundary of defendant's property and the southern boundary of the easement road. The practical effect of the triangle easement is that it allows a more gradual turn onto the easement road from the new access road, as opposed to what would have otherwise been a 90-degree turn.

After the parties settled the neighbor's suit and constructed the new access road, defendant installed a gate across the easement road at a point approximately 30 feet east of the western boundary of his property. Plaintiffs expressed their disapproval of the gate, and their tenant at that time refused to accept a key to open a lock securing the gate. As a result, defendant has not locked the gate, although he has attempted to secure it shut on occasion by other means. Plaintiffs and their tenants have also resisted all attempts to keep the gate closed.

The dispute that triggered this action, however, resulted from defendant's proposal to fence his entire property line, including the shared boundary with plaintiffs. As part of that plan, defendant proposed to replace the existing gate near the west end of the easement road, and add a second gate at the point that the easement road abuts the shared boundary, which is also the point at which plaintiffs access their property. In effect, defendant's proposal would enclose plaintiffs' property along the shared boundary and require them to pass through two gates to access their property. Plaintiffs objected to the proposal and offered a counter-proposal under which they would pay for and install a fence south of the easement road. Defendant rejected that proposal, and at some point hired someone to begin installation of the fence. This litigation ensued. Plaintiffs sought a judgment declaring that a fence on the north side of the easement road and the construction of one or more gates on the easement road is an unreasonable restriction on their right to use the easement road.

Following a bench trial, the trial court entered a judgment that dictated the terms under which defendant could replace the existing gate and construct a fence on the property. Although the court granted permission to replace the existing gate, it stated that the gate could not be replaced until defendant had fenced his entire western property line. The court also required any replacement gate to be situated in such a manner as to allow "a ten-yard dump truck" to make the turn onto the easement road "without backing up." Further, the court stated that any new gate had to be controlled by electronic keypad with an intercom system connected to both houses. The court placed responsibility for the cost of installing and maintaining the gate and the electronic

keypad on defendant. Finally, the court restricted any fence to the southern boundary of the easement road.

## II. ANALYSIS

On appeal, defendant challenges the trial court's decision in four respects. First, he objects to the requirement that any replacement gate must be constructed so that a 10-yard dump truck can make the turn off the alley without backing up.[3] Second, he contends that the court impermissibly required that the full western boundary of his property be fenced before the replacement gate can be installed. Third, he disputes the court's ruling to the extent that it requires him to construct any fence along the easement road along the southern boundary of the easement road, as opposed to along the shared boundary. Fourth, he challenges the ruling to the extent that it requires him to install an electric gate with an intercom and to bear the cost of maintaining both.

 Generally, the dominant and servient estate owner's right to use an easement is mutually limiting. *Clark v. Kuhn*, 171 Or App 29, 33, 15 P3d 37 (2000). An easement owner is limited to the uses of the easement that are reasonably necessary to satisfy the easement's intended purpose. *Id.* The servient estate owner maintains dominion over the easement land and has the right to use that land, as long as that use does not unreasonably interfere with the easement owner's use. *Clark*, 171 Or App at 33; *Wagner v. O'Callaghan*, 104 Or App 284, 287, 800 P2d 309 (1990).

 Whether a servient estate owner's use of land that is subject to an easement substantially interferes with the easement owner's use of the easement is a question of fact. *D'Abbracci v. Shaw-Bastian*, 201 Or App 108, 117, 117 P3d 1032 (2005). We review the record *de novo*. We look at the purpose of the easement and examine whether the servient estate owner's conduct "deprived the dominant estate owners of a degree of use to which they were entitled by the easement." *Craft v. Weakland*, 174 Or App 185, 189, 23 P3d 413

---

[3] Defendant does not challenge the order to the extent that it authorizes the installation of a replacement gate in the same location as the existing gate.

(2001). The dominant estate owner bears the burden of demonstrating that the interference with use of the easement is substantial. *Id.* at 190.

With those general principles in mind, we turn to the specific issues raised in this appeal.

A. *The Replacement Gate*

■ First, we address the trial court's order that defendant can install a replacement gate only in a manner that permits a 10-yard dump truck to turn onto the easement road without backing up. Defendant contends that the parties negotiated the triangle easement to address any concern over plaintiffs' access to the easement road; according to defendant, the court's order impermissibly expands the physical boundaries of that easement. Moreover, defendant points out, plaintiffs use a dump truck to access their property only six times per year. Given the relative infrequency of plaintiffs' use of the dump truck, he argues, constructing a gate in a way that requires them to back up the truck to the access road is simply not a substantial interference with the purposes of the easement.

In reply, plaintiffs acknowledge that, because the existing gate is located approximately 30 feet east of the turn, "it seems highly unlikely that, in fact, any replacement of the * * * gate will affect the ability of a 10-yard dump truck to make the turn." Nevertheless, they insist that the court's decision should be upheld because, if the replacement gate complicates the turn, the intent of the triangle easement will be rendered useless. As a result, they view the court's order as, in effect, an insurance policy against future possible substantial interference.

Both defendant and plaintiffs testified at trial that, as part of the negotiations to settle the neighbor's suit, plaintiffs agreed to give up the eastern 40 feet of their existing easement on the easement road in exchange for the triangle easement. The eastern 40 feet that they gave up is apparently that portion of the easement road that lies beyond their gravel driveway and parking area. Plaintiffs attributed their need for the triangle easement to their occasional use of the easement road with a dump truck or a car towing a trailer.

The express language of the easement recognizes that the triangle easement was intended to allow plaintiffs a more gradual turn from the alley to the easement. The triangle easement is memorialized as part of the settlement agreement and was conveyed by deed from defendant to plaintiffs.

We conclude that the evidence does not demonstrate that defendant's proposed location of a replacement gate at the existing gate will substantially interfere with plaintiffs' reasonable use of the easement for its intended purpose of ingress and egress. Most notably, the replacement gate will be placed in the same location as the existing gate. The record reflects that defendant installed the existing gate in 2003, but contains no evidence that the existing gate has caused substantial interference with plaintiffs' ability to access the easement road with a 10-yard dump truck or any other vehicle in the intervening years. The only evidence that even remotely addresses the matter is testimony by plaintiff Joe Bolduc that, if the existing gate is closed or locked, there is not enough room for a large vehicle to comfortably turn around without trespassing on the neighbor's property, and further testimony that the only way to turn a dump truck around so as to exit the property on the easement road is to use the gravel turnaround area adjacent to the house on plaintiffs' property.

Neither piece of testimony demonstrates substantial interference. As to the former, if the gate is closed or locked, plaintiffs will have sufficient means to open or unlock it. As to the latter, the ability to turn around the vehicle does not relate to the location of the replacement gate, and in fact demonstrates that ingress and egress is possible with the gate located at the existing location. In sum, we conclude that the location of the existing gate and proposed replacement gate will not substantially interfere with plaintiffs' use of the easement road for ingress and egress and that the trial court erred in reaching a contrary conclusion.

B. *Western Boundary Fence*

■ Second, we address the court's requirement that defendant must first construct a fence on the western boundary of his property before he may install the replacement gate. The source of that particular part of the court's decision

is not entirely clear, particularly given that neither of the parties raised any issue about the need to build a fence at that location. It appears that the trial court fashioned the requirement that defendant first fence the western boundary in response to arguments that defendant advanced at trial that the gates and fencing at the northern boundary were necessary for security purposes. The court appears to have decided that, if that was the reason for defendant's proposal, then he should demonstrate as much by first fencing the entire western boundary as well, before installing gates.

We agree with defendant that the order in which he chooses to fence the boundary of his property is immaterial to any issue in this case. The issues raised by plaintiffs' complaint in this case have to do with defendant's proposal to replace the existing gate, to construct a fence on the shared boundary, and to install a second gate at plaintiffs' driveway and whether those proposals substantially interfere with plaintiffs' easements. Whether defendant builds a fence on the western boundary of his property has no bearing on that inquiry.

■ As we stated in *Wagner*, "if the fencing of a boundary line does not interfere with the use of an easement for the purposes for which it was granted, it is permissible for a land owner to do so." 104 Or App at 287. There is no evidence in the record that a fence along the western boundary of defendant's property has any relation to or interferes in any way with plaintiffs' use of the triangle easement or easement road. Because the construction of a fence at the western boundary does not implicate any of the land subject to the easement road, we conclude that the trial court erred by requiring defendant to complete the fence along his property's western boundary before replacing the gate.

C. *Location of the Northern Boundary Fence*

■ Third, we address the court's determination that, if defendant chooses to build a fence on the northern part of his property, it must be located not on the actual boundary of the property, but on the southern boundary of the easement. Again, our statement of the law in *Wagner* is instructive: A landowner may construct a boundary fence unless it interferes with the use of an easement for the purpose for which

the easement was granted. *Id.* In that case, we concluded that when the servient estate owner fenced both sides of a 10-foot-wide road easement, the exterior fence constituted a substantial interference with the easement because with fencing on both sides of the road, the easement owner could no longer negotiate a sharp turn in the road easement, and thus, could not drive a vehicle on the easement. *Id.* at 286-88. In addition, the servient estate owner's cattle were restrained by the interior fence and thus, the exterior fence was unnecessary for reasonable use of the landowner's property, and it could be removed without undue hardship to the landowner. *Id.* at 288.

In this case, it is clear from the record that, for a significant portion of plaintiffs' easement, the northern boundary of the easement road is located several feet south of the shared boundary. As defendant testified without contradiction,

"[i]f there wasn't a gate at or near the perimeter or in the approximate location it was, there would be an approximate 120 foot by 20 foot wide strip of land that we frequently harvest mushrooms off of that would be in the complete control of anybody who walked down there and said, 'Oh, look. That's a pile of chanterelles' * * *."

Both parties, in fact, acknowledged that a strip of land exists between the easement road and the shared boundary. Photographs entered into evidence confirm that fact. Accordingly, requiring any fence to be located at the southern boundary of the easement results in the creation of a strip of land that cannot be secured from trespassers.

We note that what the record does not conclusively show is the precise point at which the easement road abuts the shared boundary. Defendant testified that the distance from the existing gate to the point where plaintiffs access their property is approximately 130 feet and that the graveled area that leaves the easement road and serves as their driveway is approximately 30-feet wide. Plaintiffs did not testify as to the exact location where the easement road and shared boundary intersect, but they did offer testimony that a fence along the shared boundary would affect their ability to deliver logs to a location near the garage. According

to plaintiffs, they periodically deliver logs to their tenant on the property for firewood. To do so, they enter the driveway area from the easement road, back up and dump the logs at the corner of the garage, or occasionally at the back of the garage. According to Joe Bolduc, defendant could fence a portion of the shared boundary, but the 50 or 60 feet of the area along the shared property boundary must remain open so that they can back up the dump truck and dump the logs behind the garage.

We conclude that, to the extent that defendant proposes to construct a fence along the shared boundary where the boundary does not abut the easement road, there is nothing in the record that shows that such a fence would substantially interfere with plaintiffs' use of the easement road for ingress and egress. Defendant proposed to build that fence along the shared boundary, and for the majority of its length it would be located north of the easement road. The portion of the shared boundary that is located north of the easement road does not implicate land that is subject to plaintiffs' easement, and it would be inappropriate for us to restrict defendant from building a fence along his property line. To the extent that the fence may interfere with plaintiffs' ability occasionally to deliver logs to a specific location on their property, such a use is not reasonably necessary to satisfy the purpose of the easement road for ingress and egress.

## D. *Cost of Improvements and Maintenance*

Finally, we address responsibility for the cost of maintaining the gate. The easement that resulted from the joint settlement agreement stated that the parties would share the cost of maintaining the road in proportion to each party's use of the road, but does not address the cost of maintaining improvements. At oral argument, defendant does not object to the trial court's requirement that the gate be electronic, but he does object to the court's decision that he be required to bear the full cost of maintaining it. According to defendant, the cost of maintenance should be shared. Plaintiffs offer no good reason for not sharing those costs other than the fact that they objected to the construction of a gate in the first place. We conclude that the cost of maintaining the electric gate and intercom should be shared equally.

## E. *Loose Ends*

As we have noted, the trial court ordered that the fencing at the north end of defendant's property be located not at the shared boundary, but at the southern boundary of the easement. That decision rendered academic defendant's proposal to build a second gate where the easement itself meets the shared boundary between the properties. Our decision to reverse the trial court on the matter of the location of the fence, in effect, revives the issue of whether defendant should be permitted to construct the proposed second gate.

It is tempting for us to simply decide the issue here and now. But we decline to do so for several reasons. First, the trial court did not reach the issue, and, although we have *de novo* review, we ordinarily limit that review to decisions that trial courts actually rendered. Second, no one, so far as we can tell, has asked us to address that issue. Third, on the record before us, it is not clear that we could decide the issue, particularly given the lack of evidence about the precise location of the roadway easement in relation to the northern boundary of defendant's property, which we have noted.

Reversed and remanded (1) with instructions to enter modified judgment allowing defendant to construct an electronic replacement gate with intercom at location of the existing gate, deleting the requirement that defendant must construct a fence along the western boundary of his property, permitting defendant to construct a fence along the northern boundary of his property; and (2) for further proceedings to determine whether defendant may construct a second gate at the boundary between the parties' properties; otherwise affirmed.

# APPENDIX