Argued and submitted June 11, 2019; on appeal, reversed and remanded for entry of judgment dismissing with prejudice plaintiffs' claims of breach of contract and breach of the implied covenant of good faith and fair dealing, otherwise affirmed; on cross-appeal, affirmed August 26; petition for review denied December 10, 2020 (367 Or 290)

# Barry J. SANDER
## and Goldye Wolf, Trustees of the Barry J. Sander and Goldye Wolf Revocable Living Trust,
### *Plaintiffs-Respondents Cross-Appellants,*

*v.*

## Paul NICHOLSON
### and Cathy Nicholson, husband and wife,
### *Defendants-Appellants Cross-Respondents.*

## Jackson County Circuit Court
## 13CV04065; A161996

473 P3d 1113

Plaintiffs brought a variety of claims related to an easement agreement, alleging that defendants' improvements within the easement interfered with plaintiffs' access. Defendants counterclaimed. The trial court entered a judgment declaring that plaintiffs have an easement for ingress and egress running the length of defendants' eastern boundary, concluding that defendants are interfering with that easement, and ordering removal of defendants' improvements. The court also directed a verdict in plaintiffs' favor as to liability on plaintiffs' contract claims but dismissed them without prejudice after concluding that issues as to damages were not ripe. Similarly, the court dismissed without prejudice plaintiffs' negligent and intentional trespass claims, but dismissed with prejudice plaintiffs' fraud, negligent misrepresentation, and private nuisance claims. The court dismissed defendants' counterclaims with prejudice. In a supplemental judgment, the court denied plaintiffs' request for attorney fees and awarded a reduced amount of costs. Defendants appeal and plaintiffs cross-appeal. *Held*: As to defendants' appeal, the trial court did not err in granting plaintiffs' claims for interference with easement and declaratory judgment, but the court did err in its rulings concerning plaintiffs' contract claims. Defendants failed to preserve their challenge to the court's denial of their motion for directed verdict on plaintiffs' claims of negligent and intentional trespass. As to plaintiffs' cross-appeal, the trial court did not err in denying plaintiffs' request for attorney fees and awarding a reduced amount of costs.

On appeal, reversed and remanded for entry of judgment dismissing with prejudice plaintiffs' claims of breach of contract and breach of the implied covenant of good faith and fair dealing; otherwise affirmed. On cross-appeal, affirmed.

Timothy C. Gerking, Judge. (General Judgment)

Ronald D. Grensky, Judge. (Supplemental Judgment)

Alicia Marie Wilson argued the cause for appellants-cross-respondents. On the briefs was Frohnmayer, Deatherage, Jamieson, Moore, Armosino and McGovern, P.C.

Samuel Kornhauser argued the cause for respondents-cross-appellants. Also on the briefs were law offices of Samuel Kornhauser, Jay Beattie, and Lindsay Hart LLP.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.*

DeVORE, J.

On appeal, reversed and remanded for entry of judgment dismissing with prejudice plaintiffs' claims of breach of contract and breach of the implied covenant of good faith and fair dealing; otherwise affirmed. On cross-appeal, affirmed.

_____
  * DeVore, J., *vice* Hadlock, J. pro tempore.

**DeVORE, J.**

Plaintiffs brought this action with a variety of claims related to an easement agreement, alleging that defendants' improvements within the easement interfered with plaintiffs' access. Defendants counterclaimed. The trial court entered a judgment declaring that plaintiffs have an easement for ingress and egress running the length of defendants' eastern boundary, concluding that defendants are interfering with that easement, and ordering removal of defendants' improvements. The court directed a verdict in plaintiffs' favor as to liability on plaintiffs' contract claims but dismissed them without prejudice after concluding that issues as to damages were not ripe. The court also dismissed without prejudice plaintiff's claims for negligent and intentional trespass, but the court dismissed with prejudice plaintiffs' fraud, negligent misrepresentation, and private nuisance claims. The court dismissed defendants' counterclaims with prejudice. In a supplemental judgment, the court denied plaintiffs' request for attorney fees and awarded a reduced amount of costs. Defendants appeal, and plaintiffs cross-appeal.

We conclude that the trial court erred as to its rulings concerning plaintiffs' contract claims but otherwise affirm the judgment. On the primary issue raised by defendants' first three assignments of error, we conclude that the trial court did not err in granting plaintiffs' claims for interference with easement and declaratory judgment. We reject without further discussion defendants' fourth assignment in which they contend that the court erred in considering parol evidence to interpret the easement. We conclude, as to defendants' fifth assignment, that the trial court erred in denying defendants their motion for directed verdict, and in granting plaintiffs' motion for directed verdict as to liability, with regard to plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing. We reject as unpreserved defendants' sixth assignment of error, which challenges the court's denial of their motion for directed verdict on plaintiffs' claims of negligent and intentional trespass on a ground not asserted in their motion. We reject plaintiffs' first assignment of error on cross-appeal—that the trial court erred in dismissing

their claims for fraud and negligent misrepresentation—without further discussion. We conclude, as to plaintiffs' second assignment of error, that the trial court did not err in denying their request for attorney fees and awarding a reduced amount of costs in the supplemental judgment.

## I.   BACKGROUND

In 1994, plaintiffs and an adjacent property owner, Monosoff, created and recorded a reciprocal express easement running along the eastern boundaries of both properties.[1] It provides:

> "*The parties hereby grant unto each other, their successors and assigns, a perpetual and non-exclusive easement for ingress and egress, as well as the installation and maintenance of underground utilities lines, within 25 feet of the east boundaries of the two parcels.* It is further agreed between the parties that each will dedicate the area described in this easement unto the City of Ashland for creation of a public roadway, along with such additional land adjoining as shall be necessary for creation of the public roadway, at such time as the City is willing to accept said dedication, and construct said roadway, and one of these parties requests same of the other in writing."

(Emphasis added.) A county-owned local access road, Prather Street, runs parallel to the southern portion of the easement on what became defendants' property. The parties do not dispute that the road existed at the time the easement was created.

In December 2005, Monosoff partitioned his property and sold the parcel containing the easement to defendants. A domestic well was constructed on the southern portion of the easement on defendants' property, and, over the

---

[1] The easement was part of an agreement between Monosoff and plaintiffs in which they partitioned what was once their jointly owned 27-acre property into two roughly equal parcels, with Monosoff owning the southern parcel and plaintiffs owning the northern portion. In conjunction with that partition, they entered into an agreement for a nonexclusive easement for ingress and egress, as well as for the installation and maintenance of underground utilities, along the eastern edge of both parcels. The parties apparently contemplated that Monosoff and plaintiffs would each, in the future, develop the eastern five acres of their respective parcels and would need to use the easement for ingress and egress to the to-be-developed lots.

years, defendants have added other improvements within that portion of the easement, including a rock wall, trees, fencing, and other landscaping.[2] Defendants' house is within eight to ten feet of the western edge of the easement. The diagram below is an approximation of the relationship of the properties.



Plaintiffs filed this action, asserting claims due to defendants' alleged obstruction of the southern portion of the easement. Plaintiffs alleged interference with easement, negligent and intentional trespass, declaratory judgment, breach of contract and of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, and private nuisance. Defendants counterclaimed for declaratory judgment, quiet title, and attorney fees.

A jury trial was held, but the trial court ultimately decided the parties' claims on motions before the case was submitted to the jury. The court subsequently entered a general judgment declaring:

> "Plaintiffs have an easement 25 feet wide (which includes the five foot strip purportedly dedicated to the City of Ashland) along the entire eastern length of Defendants' property, and Plaintiffs have the right to use the entire length and width of the easement (described in Exhibit 29 attached hereto and incorporated herein) for ingress and egress. This Court specifically rejects Defendants' contention that Plaintiffs may only use the portion of the

---

[2] The record is unclear whether Monosoff or defendants were responsible for constructing the well.

easement for ingress and egress starting at the northern terminus of Prather Street."

Consistent with that declaration, the court ruled in plaintiffs' favor on their claim of interference with easement. The judgment authorizes plaintiffs to remove defendants' well, rock walls, landscaping, fences, and trees from the southern portion of easement, at defendants' expense if defendants fail to do so.[3] The judgment also enjoins defendants from building any more structures or placing any obstructions on the easement.

A variety of issues were resolved when reaching that judgment. The court directed a verdict for plaintiffs on the liability portion of their claims for breach of the easement agreement and breach of an implied covenant of good faith and fair dealing. The court, however, dismissed, on defendants' motion, the "damages component" of those claims without prejudice as "not yet ripe." The court likewise dismissed plaintiffs' trespass claims without prejudice. The court dismissed with prejudice plaintiffs' claims of fraud, negligent misrepresentation, and private nuisance. The court dismissed defendants' three counterclaims with prejudice. Later, the court entered a supplemental judgment denying plaintiffs' request for attorney fees and awarding a reduced amount of costs.

## II.   DEFENDANTS' APPEAL

### A.   *Interference with Easement*

In their first three assignments of error, defendants challenge the trial court's rulings in plaintiffs' favor on declaratory judgment and interference with easement.[4]

---

[3] The judgment, however, requires plaintiffs to bear the expense of removing the trees. As to the well, the judgment provides that, if defendants do not remove or vault it, obtaining all necessary permits, within 90 days, then plaintiffs may remove it at defendants' expense.

[4] Defendants contend that the trial court erred in (1) "entering a judgment requiring removal of any tree or manmade obstruction including [defendants'] well, fencing, landscaping and rock wall within the 25-foot easement and by injunction preventing any future use or improvement whatsoever in the future"; (2) granting directed verdict to plaintiffs for interference with easement because there was evidence from which a jury could find that "plaintiffs as a matter of fact have ingress or egress [access] to their property over the easement with the use of Prather"; and (3) denying their motion for directed verdict on their counterclaim

Those assignments of error present essentially the same question, although posed in different ways. Did the trial court err in declaring that plaintiffs have use of a 25-foot-wide easement along the entire eastern boundary of defendants' property for the purpose of ingress and egress to plaintiffs' property, and, therefore, that defendants have interfered with that easement by obstructing it? Is that true when plaintiffs have ingress and egress by an alternate means of Prather Street? Those questions are legal issues that we review for legal error.[5] On those central issues, we conclude that the trial court did not err.

"An express easement is one expressed clearly in writing containing plain and direct language evincing the grantor's intent to create a right in the nature of an easement." *Bloomfield v. Weakland*, 224 Or App 433, 445, 199 P3d 318 (2008), *rev den*, 346 Or 115 (2009). It may be extinguished only by consent, prescription, abandonment, or merger. *Cotsifas v. Conrad*, 137 Or App 468, 471, 905 P2d 851 (1996). Here, it is undisputed that plaintiffs have a nonexclusive, express easement running along the eastern boundary of defendants' property and that it has not been extinguished.[6] It is also undisputed in this case that defendants' obstructions on their southern portion of the easement—landscaping, rock walls, plants, trees, fences, and a well—make that portion unusable by plaintiffs for vehicular ingress/egress to their property.

In their defense, defendants assert that "an easement holder is not entitled to unrestricted use of an entire

for declaratory judgment "fixing the current use of the easement by defendants as reasonable and providing for plaintiffs' existing use for access utilizing Prather and road over northern section of easement."

[5] The parties disputed below whether, as a factual matter, plaintiffs have reasonable ingress and egress to their property using Prather Street—especially as may affect their ability to partition their property. The court concluded that defendants could not obstruct plaintiffs' access to defendants' southern section of the easement and that plaintiffs had the right to use that section of the easement *even if* there was a reasonable alternative route, without use of the southern section. As the trial court observed, "The only question is: Is the fact that there's a road that runs parallel sufficient such as to essentially eliminate the bottom half of this easement?"

[6] Although defendants initially asserted that the express easement was limited to the northern portion of their property, they stipulated before trial that the easement grant was for the entire length.

easement. Rather, the use must be tempered by what is necessary to accomplish the purpose for which the easement is granted and the rights of the servient estate holders." In defendants' view, the purpose of the easement in this case is ingress and egress and that purpose is accomplished by plaintiffs' use of Prather Street to reach the northern section of the easement and, from there, their property. Therefore, defendants contend that plaintiffs failed to demonstrate that defendants' improvements "unreasonably and substantially" interfere with the easement. Defendants conclude that the trial court, in concluding otherwise, disregarded defendants' rights, as the servient estate holder, "to use the burdened property in ways that do not unreasonably interfere with the dominant estate holder's reasonably necessary use of the property."

For fundamental reasons, we disagree. We have previously recounted, with respect to expressly created easement rights, that

> "'(1) the terms of the granting instrument, if unambiguous, define the location and the intended purpose of the easement; (2) the dominant estate holder's right to use the easement is limited to what is reasonably necessary to accomplish the intended purpose of the easement; and (3) the servient estate holder retains the right to use the burdened property in ways that do not unreasonably interfere with the dominant estate holder's reasonably necessary use of the property.'"

*Knight v. Nyara*, 240 Or App 586, 594-95, 248 P3d 36 (2011) (quoting *D'Abbracci v. Shaw-Bastian*, 201 Or App 108, 121, 117 P3d 1032 (2005)). In short, "the dominant and servient estate owner's right to use an easement is mutually limiting." *Bolduc v. Thompson*, 238 Or App 625, 630, 245 P3d 131 (2010). It is the dominant estate owner's burden to demonstrate a "substantial" or "unreasonable" interference with their right to use the easement, which "turns on whether the conduct of the servient estate owners deprived the dominant estate owners of a degree of use to which they were entitled by the easement."[7] *Craft v. Weakland*, 174 Or App 185, 189, 23 P3d 413 (2001) (internal quotation marks omitted).

---

[7] Although that generally is a fact-based inquiry, *Bolduc*, 238 Or App at 630, as noted above, in this case, it reduces to a purely legal issue—whether,

As relevant to this case, the principal purpose of the express easement is "ingress and egress," the meaning of which the parties do not dispute.[8] Nevertheless, defendants assert that, because plaintiffs have such ingress and egress to their property through a parallel route, they cannot demonstrate a "substantial" or "unreasonable" interference with their right to use the easement by defendants' obstruction of a portion of it. In support of that position, they rely primarily on *Craft* and *Clark v. Kuhn*, 171 Or App 29, 15 P3d 37 (2000). Those cases, however, do not assist defendants.

In *Clark*, the defendant, the dominant estate owner, sought to widen and pave a gravel road within the 25-foot wide easement that the defendant held "for right-of-way purposes." 171 Or App at 31. Doing so would require the removal of obstructions that the servient owner had placed within the easement, including trees, large rocks, and a dirt berm. We concluded that some of the changes sought by the defendant—that is, widening of the road in places by removing trees and trimming low-hanging branches—were "reasonably necessary" to allow for safe vehicular passage, but that use of the entire 25-foot easement for a paved, two-lane road was not "*essential* to defendant's ingress and egress to his property" and, therefore, was not reasonably necessary to accomplish the purposes of the easement. *Id*. at 34-35 (emphasis in original).

In *Craft*, the plaintiff sought removal of a fence, gate, and windscreens that the defendant, the servient owner, had installed within an easement that the plaintiff held across the defendant's property for "ingress and egress" to the beach. 174 Or App at 187. The easement was 10 feet wide and approximately 75 feet long. We concluded that the plaintiff failed to show that the interference with her easement rights caused by the gated fence and windscreens was substantial, given the scope and purpose of the easement.

even adopting defendants' view of the facts, any factfinder could reject plaintiffs' claim.

[8] As noted, the easement was also for the purpose of "installation and maintenance of underground utilities lines," and it provided that the parties would dedicate the easement area to the city for construction of a road under specified circumstances. This litigation focuses solely on whether the easement's purpose of ingress and egress is satisfied.

*Id*. at 192. We explained that the plaintiff could "reasonably accomplish the easement's purpose despite the windscreens and gated fence," in other words, "removal of those structures [did] not appear to be essential to plaintiff's ingress and egress to the beach," *id.*, and the structures were, on the other hand, "reasonably necessary for defendant's enjoyment of her property," for security reasons, *id*. at 193.[9]

In neither of those cases, however, did we uphold a servient estate owner's use of the easement property so as to divert the ingress and egress access to which the dominant landowner was entitled entirely *away from* the ingress and egress route guaranteed by the easement, as defendants have done here. *See generally Clark*, 171 Or App at 33 ("The permissible uses or scope of an easement, as distinguished from its location, may vary depending on what land is necessary for the fulfillment of the easement's purpose." (Footnote omitted.)); *D'Abbracci*, 201 Or App at 121-22 (holding that servient estate owner was allowed to unilaterally relocate a road "*within the boundaries of the easement* if the change does not unreasonably interfere with the dominant estate holder's reasonably necessary use of the easement" for ingress and egress (emphasis added)). *Clark* and *Craft* do not suggest that the servient estate owner may compel the dominant estate owner to use property outside of the easement. We do not understand those cases to support extinguishing a portion of a route of an express easement for which a party bargained, as defendants did here, due to the possibility of alternate access elsewhere. A pair of cases instruct otherwise.

In *Cotsifas*, the plaintiff held an express easement across a portion of the defendant's property for ingress and egress to the plaintiff's property from SW Hamilton. 137 Or App at 470. The easement paralleled another road, SW 40th Avenue, which at the time of the grant was a gravel road. After the city paved SW 40th, the defendant objected to the plaintiff's continued use of the easement and placed obstructions in it: parking his car, planting vegetation, and

---

[9] In *Clark* and *Craft*, our review of the evidence was *de novo*. In 2009, the legislature amended ORS 19.415 to make *de novo* review discretionary in equitable actions. Or Laws 2009, ch 231, § 2. Here, our disposition rests on a legal analysis alone.

putting up a mailbox. The plaintiff sought to enjoin the defendant from interfering with his use of the easement, and the defendant counterclaimed for extinguishment of the easement as no longer necessary due to the paving of SW 40th. The trial court concluded that lack of necessity could not warrant extinguishment of an express easement, but that it was "no longer reasonable" to allow the plaintiff vehicular use of the easement. *Id.* at 471. On appeal, we agreed with the trial court that "[o]nly an easement by necessity terminates when the necessity ceases." *Id.* (citing *Rose et ux. v. Denn et ux.*, 188 Or 1, 30, 212 P2d 1077 (1950)). We also disagreed with the defendant's argument that the easement was identical in purpose to a way of necessity and thus could be extinguished where it was no longer necessary. *Id.* To explain, we reflected on an earlier decision, *Abbott v. Thompson*, 56 Or App 311, 641 P2d 652, *rev den*, 293 Or 103 (1982). We recalled that, in *Abbott*, the defendants had sought to prevent the plaintiffs from using their "easement of ingress and egress" over the defendants' property because the plaintiffs had another way of ingress and egress over a different landowner's property. We held that, "because the language of the grant did not limit the easement to a way of necessity, the existence of an alternative means of ingress and egress did not terminate the easement." *Cotsifas*, 137 Or App at 472 (citing *Abbott*, 56 Or App at 315). In *Cotsifas,* we concluded that the paving of the alternate ingress and egress route was "beside the point," noting that the alternate route was in existence and available to the plaintiff for vehicular access at the time the easement was created. *Id.* at 473.

This case is not materially distinguishable from *Cotsifas* and *Abbott*. Essentially, defendants contend that use of the southern portion of the express easement is not *necessary* for ingress and egress to plaintiffs' property, and that, therefore, the trial court erred in declaring the easement to include that portion and concluding that defendants' obstructions are interfering with it. As in *Cotsifas* and *Abbott*, however, the easement grant was not limited to a way of necessity. As in *Cotsifas*, the alternative route, Prather Street, existed at the time plaintiffs nonetheless bargained for and recorded an express easement running

the entire length of defendants' eastern boundary. The only distinction here, perhaps, is that defendants do not seek to extinguish the entire easement, only the southern section of it on their property. That is, nonetheless, a distinction without a difference. That plaintiffs could access their property using, *in part*, some means other than the easement does not compel a conclusion that plaintiffs' use of their express easement for that purpose is not "*reasonably* necessary" under the reasoning of *Cotsifas* and *Abbott*. Defendants' obstruction of the southern portion of the easement, denying plaintiffs its use for vehicular ingress and egress to their property, does deny plaintiffs "a degree of use to which they were entitled by the easement." *Craft*, 174 Or App at 189; *see also Marsh v. Pullen*, 50 Or App 405, 409, 623 P2d 1078, *rev den*, 290 Or 853 (1981) (parked cars blocking the plaintiffs easement, which was for "a means of ingress and egress," interfered with their "free and unrestricted use of the easement and deprive[d them] of a degree of use to which they [were] entitled by the original grant of the easement").

To the extent that defendants argue that the trial court erred because some amount "far less" than the entire 25-foot *width* of the easement was sufficient to allow plaintiffs' vehicular ingress and egress using the length of the easement, we conclude that defendants did not preserve that argument before the trial court and, for that reason, we do not address its merits. ORAP 5.45(1); *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) (preservation requires that, for an issue to be considered on appeal, it ordinarily must first be presented to the trial court). Defendants argued throughout the litigation that plaintiffs' reasonably necessary use of the easement for ingress and egress purposes was limited to the northern section of the easement, not to a narrower width—less than 25 feet—of the southern section, where defendants had placed their improvements. In their counterclaim for declaratory judgment, defendants contended that "Plaintiffs' right to use Defendants' Property for ingress and egress under the 1994 Easement Agreement is limited in location to the Undisputed Easement Area [described and depicted on an attached map as the area north of the terminus of Prather Street and within 25 feet of the east boundary of defendants' property], along which

vehicular and pedestrian travel has been possible and avail-able since prior to the initiation of this litigation." In their trial memorandum, defendants argued:

> "It is defendants' position that plaintiffs do not require the entire length of the easement in order to access their property. Further, plaintiffs have vehicular access to their property by driving up Prather Street to its northern ter-minus and then onto the undisputed portion of the ease-ment. The improvements placed on the disputed portion of the easement by defendants do not interfere with plaintiffs' right to ingress and egress."

In responding to plaintiffs' motion for a directed verdict on their interference claim, defendants did make one passing reference, for illustrative purposes, to the reasonableness of the width of the easement. Defense counsel argued:

> "And the law is clear *** that you only get to use that por-tion of the easement that you need to discharge the ease-ment's grant. *For example*, they would have to prove that they would need the whole 25 feet to build the road and not just 12 feet like most roads are. And so the question of whether or not my clients' use of the easement is reasonable, there's sufficient facts to go to the jury on that question."

(Emphasis added.) To which, the court responded, in part:

> "If you grant a 25-foot easement, it means that you're enti-tled to use some part of that 25 feet, not 5 feet of it, not 10 feet of it; but 25 needs to more or less be unobstructed. You may not pave 25, you may not make the road 25, but you can't have a bunch of stuff that goes inside the 25. That's got to be kept more or less clear."

As the colloquy continued, defense counsel clarified:

> "This is a different case in the sense that *we're not talking about the width of the easement; we're talking about the length of the easement*. The law is no different.
>
>        "*****
>
>        "*** The law is no different. So I have offered evidence that they have a use of—we're not blocking—if we were [to] block the whole entire easement, then I would agree, but we're not. *Half of the easement, they have access to. And the question is whether they need to use the rest of it, whether it's*

*reasonable for them to use the rest of it, or whether they don't need to use the rest of it.*

"It's no different. And there's tons of cases where you've got a 60-foot easement, and they want to pave the whole thing, and the Court said, 'Oh, you don't need that much. You get what you need.' *So the fact that it's a 25-foot-wide easement doesn't matter. It's the length of the easement that matters.*"

(Emphases added.)

On review of the record, it is clear that neither the trial court nor plaintiffs were alerted to defendants' theory that an *expanse* of 25 feet, including on the southern portion, is not reasonably necessary for plaintiffs' ingress and egress; rather, they argued below only that it was not reasonably necessary for plaintiffs to use the southern portion of the easement *at all* because sufficient ingress/egress to their property was available using Prather Street, in conjunction with the northern portion, instead.[10] *See Peeples*, 345 Or at 220 ("What is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court.").

On the central issues, challenged by defendants' first three assignments of error, we conclude that the trial court did not err in declaring plaintiffs' right to the use of defendant's southern section of the easement and in enjoining defendants' impermissible interference.

B.   *Contract Claims*

The trial court's resolution of plaintiffs' contract claims is problematic. Our reversal of those rulings requires untangling the arguments surrounding the claims.

---

[10] We similarly decline to address defendants' suggestion in their reply brief that the trial court misconstrued the text of the easement—that is, that the trial court erred in interpreting the easement language "*within 25 feet* of the east boundaries of the two parcels" (emphasis added) to declare a *25-foot-wide* easement. Defendants did not preserve that argument below. Nor do they develop any real argument to that effect on appeal. *See Cunningham v. Thompson*, 188 Or App 289, 297 n 2, 71 P3d 110 (2003), *rev den*, 337 Or 327 (2004) ("Ordinarily, the appellate courts of this state will decline to address an undeveloped argument.").

In their complaint, plaintiffs asserted claims for breach of contract and for breach of the implied covenant of good faith and fair dealing. Read liberally, both contract claims were based on the easement agreement and the concept that there was mutual agreement by defendants' predecessor and plaintiffs to grant each other an easement for ingress and egress. Presumably, they expressed an agreement, not only to create an easement-document of record, but to permit ongoing access thereafter. Presumably, that agreement also implied a duty of good faith to refrain from interfering with that access by placing improvements blocking access.

The complaint's preliminary recitals and initial claim alleged that defendants were assignees and successors of Monosoff, that defendants' property was subject to the easement, and that, because there was no adequate remedy at law, plaintiffs were entitled to an injunction. However, the contract claims did not allege that the obligations of the easement agreement constituted covenants or servitudes, nor that such obligations ran with the land so as to bind successors in interest.

What was clear was that the complaint sought damages of "at least $200,000" on each of the contract claims. Plaintiffs later explained that the claimed damages were not for the cost of removal of obstructions but represented the reduced value of plaintiffs' property resulting from limitations on development without access.

At the close of plaintiffs' evidence, defendants moved for directed verdicts as to the contract claims, arguing that "there [was] no contract" between plaintiffs and defendants," that, although they may be bound by an easement, an easement "doesn't rise to the level of a contract," and that there was no "personal promise" that could be the basis of a true contract claim. They argued that "an encumbrance on the land" could give rise to an interference claim, but it could not be treated as "a personal obligation of the landowner" subject to an ordinary contract claim.

Plaintiffs responded that the easement agreement created a mutual obligation to allow ingress and egress. Plaintiffs added, "[Defendants] are assignees. They took it over."

The trial court challenged the parties to provide case authority on enforcement of an easement. After retiring to review the cases offered, the court returned to deny defendants' motion for directed verdict on the contract claims. The court stated:

"Well, it's an agreement. It starts by saying it's an agreement.

"*** There clearly were mutual exchange of consideration for it, and it was executed as a standalone document. So, you know, it kind of looks like and smells like and sounds like a duck; so I'm going to call it a duck.

"I'm going to call that a contract, and so I think you can breach it."

Later, at the close of all the evidence, the court granted a "partial directed verdict" in plaintiffs' favor on the contract claims but only as to liability. Later still, the court granted defendants' motion as to the contract claims, ruling that damages were premature, given the uncertain evidence about plaintiffs' ability to develop their property. The judgment recited the court's determination of liability on both contract claims, but it dismissed the claims without damages and without prejudice.

On appeal, defendants contend that the trial court erred in denying their motions for directed verdict as to plaintiffs' breach of contract claim and the related claim of breach of the implied covenant of good faith and fair dealing and that the court erred in granting directed verdict on defendants' contract liability. We review the denial of defendants' motion for directed verdict motion by viewing the evidence in the light most favorable to plaintiffs as the nonmoving party. *Kaste v. Land O'Lakes Purina Feed, LLC*, 284 Or App 233, 238, 392 P3d 805, *rev den*, 361 Or 671 (2017). Similarly, we review the grant of plaintiffs' motion for a directed verdict, considering the evidence in the light most favorable to defendants as the party against whom the ruling was entered. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773, *rev den*, 341 Or 366 (2006). Ultimately, we review both rulings for legal error. *Id*.

Defendants reiterate that there is no basis for contract claims because "[t]here is no contract between plaintiffs

and [defendants]" and "[a]lleged interference with an easement does not give rise to a claim for breach of contract or the ancillary claim of breach of the implied duty of good faith and fair dealing." Plaintiffs insist that "[a]n easement can be, and was[,] created by contract," and, "[a]s Monosoff's successor and assignee of the Easement Agreement, [defendants] assumed and are bound by the same contract obligations as Monosoff, i.e., to provide [plaintiffs] with a 25 foot wide easement along the entire length of the eastern boundary of their property." They reason that, because defendants breached that agreement by blocking plaintiffs' access, the trial court properly granted a directed verdict in plaintiff's favor as to liability on those claims.[11]

The problem that the parties present is not that plaintiffs cannot seek damages for interference with an easement by asserting a proper claim, or that defendants, when subjected to proper claim, could not be bound by their predecessor to obligations in an easement. The problem is, what *is* a proper claim? The answer reveals the error in denying defendants' motion and granting plaintiffs' motion for directed verdict on the contract claims.

A party who suffers interference with the right to use an easement may bring a tort claim for damages for the injury to an interest in property. *See, e.g.*, *Landauer v. Steelman*, 275 Or 135, 141, 549 P2d 1256 (1976) (evidence sufficient to support verdict finding substantial interference with easement and verdict for damages); *Stephenson v. Pierson*, 145 Or App 23, 929 P2d 329 (1996) (failure to separate claims not preserved; plaintiff given injunction to establish access rights in equitable claim and awarded damages for interference on legal claim).

A party who suffers interference with the right to use an easement may bring an equitable claim, seeking an injunction, or, if an injunction is not sufficient or appropriate, seeking to be awarded monetary relief in addition or in the alternative. *See Andrews v. North Coast Development*, 270 Or 24, 36, 526 P2d 1009 (1974) (awarding damages because injunction not appropriate).

---

[11] Plaintiffs also contend that the court erred in not directing verdict in their favor as to damages; however, they do not assign error to that ruling in their cross-appeal and, accordingly, we do not discuss it.

A party who suffers interference with an easement, contrary to covenants expressed or implicit in an easement, may bring an equitable action to enforce those obligations as servitudes that run with the land to bind successors in interest. *See Fitzstephens v. Watson, et al*, 218 Or 185, 206-10, 344 P2d 221 (1959) (affirming injunction to establish easement for water right; recognizing covenant to maintain reservoir and pipeline; but affirming judgment based on sufficiency of the evidence to support court's refusal to award damages).

Here, plaintiffs and defendants' predecessor Monosoff engaged in an exchange of promises that were mutual covenants to permit ingress and egress. *See Restatement (Third) of Property: Servitudes* § 1.2(1) (2000) ("An easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement."). Such an obligation is a servitude that runs with the land and binds successors. *See Fitzstephens*, 218 Or at 209-10 (agreement to maintain reservoir and pipeline was a covenant running with the land).[12]

In this case, however, plaintiffs did not plead a tort claim for injury to their property interest. Although they sought an injunction and declaratory relief, plaintiffs did not plead an equitable claim that sought enforcement of a covenant as a servitude that runs with the land. Instead, they

---

[12] More familiar forms of covenants or servitudes are found on property subject to "conditions, covenants, and restrictions" (CCRs), which are routine obligations running with the land. The Supreme Court has elaborated, mentioning their relationship to easement agreements:

"The CCRs are 'servitudes' with multiple benefits and burdens. The rights of the lot owners are reciprocal and mutually enforceable. The beneficiaries of the servitudes are the lot owners whose property is rendered more valuable and desirable by the servitudes. The benefited property is called the 'dominant estate' or 'dominant tenement.' The servitude is said to be 'appurtenant' to the dominant estate. The burdened property is called the 'servient estate' or 'servient tenement.' Each lot [in the property at issue] is, therefore, both the dominant and the servient estate or tenement with respect to the CCRs involved; the benefits and burdens of mutual promises attach to the ownership of each lot. *See* Natelson, *Law of Property Owner Associations* 50, § 2.3.3. 1531989) (explaining concept). The servitudes themselves are 'interests in land in the same family as easements.' Cunningham, Stoebuck, and Whitman, *The Law of Property* 494, § 8.27 (1984)."

*Westwood Homeowners Assn., Inc. v. Lane County*, 318 Or 146, 864 P2d 350 (1993), *adh'd to as modified on recons*, 318 Or 327, 866 P2d 463 (1994) (footnotes omitted).

added an ordinary claim for breach of contract and a related claim for breach of the implied covenant of good faith and fair dealing. In so doing, plaintiffs did not choose to allege a claim of a familiar sort that renders a successor personally liable for damages for interference with an easement.

We recognize that plaintiffs, in the preliminary paragraphs of their complaint, did allege that defendants were assignees and successors of Monosoff; alleged that defendants' property was subject to the easement; and broadly incorporated by reference all prior paragraphs of the complaint. Yet, in the critical claims, they alleged two claims founded expressly on contract theories. Plaintiffs did not plead, in any plain way, an equitable claim to enforce a covenant or servitude. When the trial court asked for a response to defendants' motion, plaintiffs responded obliquely that defendants were assignees—that they took the land. We have held, however, that merely to say that a party has succeeded to a predecessor's interest in land does not say enough to explain why the successor should somehow be bound by a predecessor's agreement. *See LDS Development, LLC v. City of Eugene*, 280 Or App 611, 621-23, 382 P3d 576 (2016), *rev den*, 361 Or 100 (2017) (rejecting city's argument that successor developer was bound simply by reason of becoming owner of the property once owned by a party to a development agreement).

Given no better explanation, the trial court adopted plaintiffs' view that the easement agreement was a contract, simply because Monosoff and plaintiffs exchanged promises. The trial court accepted plaintiffs' contract theory. We cannot recharacterize the proceedings to avoid a problem. The court did not invoke ORCP 12 B, so as to disregard pleading errors that might not affect a substantial right, and thereafter choose to treat the contract claims as equitable claims that might enforce a servitude and seek monetary relief in addition to or in lieu of an injunction.[13] As a consequence,

---

[13] We do not indulge in consideration that the trial court might be right for the wrong reason. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining perquisites for affirming on alternate grounds not raised below). If nothing else, the issues if developed below could have developed differently on the question of standards for the award of damages in an action at law versus monetary relief in an equitable claim.

the trial court erred in denying defendants' motion for a directed verdict against the contract claims and, later, in granting plaintiffs' contract claims on liability.

## C. *Negligent and Intentional Trespass*

In their sixth assignment of error, defendants contend that the trial court erred in denying their motions for directed verdict as to plaintiffs' negligent and intentional trespass claims. As we explain, we conclude that defendants failed to preserve their arguments as to that assignment of error, and we decline to address it for that reason. *See Harrison v. Hall*, 211 Or App 697, 701, 156 P3d 141, *rev den*, 343 Or 159 (2007) ("[W]e have an independent obligation to determine whether an argument advanced on appeal was preserved at trial * * * even when a failure to preserve an argument has not been asserted by the opposing party." (Internal quotation marks and citations omitted.)). On appeal, defendants assert that, because an easement is not a possessory interest in land, plaintiffs do not have a legal basis for a trespass claim, relying on *Rogers v. Donovan*, 261 Or 124, 125 n 1, 492 P2d 768 (1972) ("Trespass lies only for an interference with a possessory interest in land. 1 Harper & James, *The Law of Torts* s 1.2 (1956). An easement is not a possessory interest in land. Therefore, the complaint incorrectly alleges that defendants' interference with the claimed easement was a trespass. 3 Tiffany, *Real Property* s 814, p. 362 (1939)."). However, defendants did not assert that ground as a basis for directed verdict in the trial court. Rather, they argued only that they were entitled to directed verdict because plaintiffs had not established *damages* related to those claims. That was insufficient to preserve their appellate argument. *Greenwood Products v. Greenwood Forest Products*, 351 Or 604, 620, 273 P3d 116 (2012) (denial of directed verdict motion unpreserved for appeal where basis for reversal was not argued in the motion below); *see also Wieber v. FedEx Ground Package System, Inc.*, 231 Or App 469, 478, 220 P3d 68 (2009), *rev den*, 349 Or 664 (2011) ("[I]n determining whether FedEx preserved its argument that the trial court erred in denying FedEx's motion for a directed verdict, we consider only what FedEx argued in moving for a directed verdict."). Accordingly, we do not reach the merits of defendants' sixth assignment of error.

### III.  PLAINTIFFS' CROSS-APPEAL

In their second assignment of error, plaintiffs challenge the trial court's denial of their motion for attorney fees and award of a reduced amount of costs in the supplemental judgment.[14]

After trial in this case, plaintiffs filed a motion for attorney fees ($124,192), costs ($12,895.87), and an enhanced prevailing party fee ($5,000). Defendants objected, arguing that plaintiffs were entitled to $1,530.50 in costs only.[15] After a hearing, the trial court entered a supplemental judgment rejecting plaintiffs' request for attorney fees on the ground that plaintiffs had not pleaded the statute or rule providing the basis for an award of fees.[16] The court sustained defendants' objections to plaintiffs' cost bill and awarded plaintiffs $1,530.50 in costs.

In their opening brief on cross-appeal, plaintiffs argue that defendants' defenses and counterclaims warranted an award of attorney fees under ORS 20.105 because they were objectively unreasonable, but they do not contest the trial court's reason for denying attorney fees: that plaintiffs had failed to plead the statute or rule providing the basis for such an award. The trial court's reasoning was correct. *See* ORCP 68 C(2)(a) ("A party seeking attorney fees shall allege the facts, statute, or rule that provides a basis for the award of fees in a pleading filed by that party."). In their reply brief, plaintiffs add that the court erred because it denied them leave to amend their complaint to plead such

---

[14] As previously noted, we reject plaintiffs' first assignment of error on cross-appeal without discussion.

[15] Defendants also filed a motion for sanctions against plaintiffs pursuant to ORCP 17 C. The trial court granted that motion and ordered plaintiffs to pay defendants $1,000, which represented "a reasonable attorney fee expended in responding to plaintiffs' unwarranted claims." Although plaintiffs attempt to include in their second assignment of error on cross-appeal an assertion that the trial court erred in awarding those sanctions, they did not cross-appeal from the supplemental judgment containing that ruling, nor do they make any argument in support of that assertion. Accordingly, the issue is not before us and we do not discuss it further.

[16] The supplemental judgment also reflected that, even if ORS 20.105 had been pleaded as a basis for fees, the request would be denied because "the court cannot find, as a matter of law, that there was no objectively reasonable basis for the counterclaims and defenses raised by defendants."

a claim. Plaintiffs, however, have not assigned error to that ruling.[17] Accordingly, we affirm the trial court's denial of attorney fees.

As to costs, plaintiffs' sole argument is that the trial court should have awarded them their full amount of costs for the same reason that they assert they were entitled to attorney fees: in their view, defendants' defenses were objectively unreasonable. We reject that argument without discussion, except to note that, in any event, plaintiffs effectively acquiesced to the amount of costs awarded.

## IV. CONCLUSION

In summary, we conclude that the trial court erred only in denying defendants' motion and granting plaintiffs' motion for directed verdict as to the claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Otherwise, we affirm the judgment of the trial court on all other issues presented in the appeal and cross-appeal.

On appeal, reversed and remanded for entry of judgment dismissing with prejudice plaintiffs' claims of breach of contract and breach of the implied covenant of good faith and fair dealing; otherwise affirmed. On cross-appeal, affirmed.

---

[17] At the hearing on plaintiffs' post-trial motion, the court noted that it had earlier denied plaintiffs' motion to amend their complaint to allege fees because it was filed just four days before trial and plaintiffs had had ample opportunity to add an attorney fee claim in earlier amendments.